The Chancellor.
The bill charges that, on the eighteenth of February, 1859, the complainant entered into a written agreement with Abraham Skinner, one of the defendants, by which Skinner covenanted to convey to the complainant a farm of one hundred and thirty-five acres, in the county of Morris, for the consideration of sis thousand seven hundred and fifty dollars, the title deed and possession of the premises to be delivered, and the consideration to be paid or secured on the of April then nest. On the fourth of April, in pursuance of the contract, the deed and possession of the premises was delivered to the complainant, who thereupon paid to the grantor one thousand dollars in cash and notes, and gave his bond fox five thousand seven hundred and fifty dollars (the balance of the consideration), secured by mortgage upon the said premises. Subsequent to the agreement the complainant sold the farm upon which he then resided, and moved upon the farm purchased of Skinner, and has since made valuable permanent improvements thereon.
On the seventh of April, 1860, a petition was filed in this court by Henry K. Skinner, a son of the grantor, praying that a commission of lunacy issue, in which petition, verified by the oath of the petitioner, it is alleged that the said Abraham Skinner then was, and for two years past and upwards had been so far deprived of his reason and understanding that he was rendered altogether unfit and unable to -govern and care for himself or to manage his affairs. A commission of lunacy thereupon issued, by virtue of which an inquisition was taken, on the eighteenth of April, 1860, *391 whereby it was found that the said Abraham Skinner was at the time of taking the said inquisition a lunatic and of unsound mind, and did not enjoy lucid intervals, so that he was not capable of the government of himself or of his estate or property, and that he had been in the same state of lunacy for the space of one year then last past and upwards. The inquisition did not find whether the said Abraham Skinner had aliened any lands or tenements after he became lunatic, nor expressly whether he was or was not of unsound mind when he so conveyed to the complainant. The inquisition was subsequently confirmed, and Henry K. Skinner appointed the guardian of the lunatic, whose lunacy still continues.
The bill charges that the contract for the purchase of the said farm was made by the complainant in good faith, without any knowledge or suspicion of insanity in the grantor; that after the execution of the contract, and after the complainant had sold the farm where he previously resided, and had taken possession of the farm purchased of Skinner, but before the delivery of the deed, he heard reports questioning his capacity to make a deed, but was induced, as well by the advice of others as by the opinion of the son and agent of Skinner, to complete the contract and take the title; and that at the time of the execution of the papers the said Abraham Skinner appeared to be, and in the opinion of the complainant was of sound mind, and in every respect competent to transact business.
The bond and mortgage given by the complainant for the farm having become due, the complainant has been called upon for payment, which he is ready and willing to make, provided his title is good, and the premises assured to him in pursuance of the terms and effect of his deed; but he insists that he ought not to be required to pay the purchase money if tlio deed is voidable by reason of the grantor being of unsound mind at the time of making the same. He further alleges that he is now able, if the validity of the deed were judicially called in question, to prove that the purchase *392 was made upon his part in perfect good faith, and for a full and fair price, and that the grantor had sufficient capacity at the time of making the contract and the deed to make the same; or if he was not, that the complainant was entirely ignorant of his incapacity. But as the validity of the title may be hereafter called in question when the witnesses are dead, or the facts lost from memory, the complainant is advised that he cannot safely pay the purchase money for the said farm until it be judicially ascertained and determined that the purchase was made by the complainant in good faith for a fair price, and without knowing that the grantor was a lunatic, and that the complainant’s deed should be confirmed and declared valid against the grantor and his heirs. The bill prays either that it may be declared and decreed that the deed was made for a full and fair consideration, and in good faith on the part of the complainant, and that the said deed is valid and binding upon the grantor and his heirs for ever, the complainant thereupon proffering himself ready to pay the balance of the purchase money; or if the court should be of opinion that for any cause the deed is not valid, and ought not to be confirmed, that it may now be avoided, the bond and mortgage of the complainant given for the consideration money directed to be cancelled, the money advanced on the purchase to be repaid with interest, and the complainant paid the value of the permanent improvements made upon the farm since the purchase, and that in the meantime the defendants may be restrained from prosecuting at law or in equity for the recovery of the amount due upon the said bond and mortgage.
The answer of Henry K. Skinner, the guardian of the lunatic, admits all the material charges and allegations of the bill touching the sale and conveyance of the said farm and the payment and security of the consideration. It does not deny the capacity of the grantor, but on the contrary insists that at the time of the conveyance there was no reason to question the sanity or capacity of the grantor; that his insanity was not developed until the autumn of 1859, *393 some months after the execution of the deed. It denies that the complainant had any just ground for fear or apprehension touching the validity of his title, or that, upon the statements contained in the 'bill, there was any sufficient reason for the institution of this suit.
Evidence has been taken, and the cause is brought on for final hearing upon the pleadings and proofs.
The complainant’s bill of complaint is in the nature of a bill quia timet, filed by the purchaser against the vendor of real estate for the better protection of his title. The contract for the purchase was made on the eighteenth of Eebruary, 1859. The conveyance was made on the fourth of April following. A commission of lunacy was afterwards issued out of this court, and by an inquisition, taken on the eighteenth of April, 1860, the vendor was found to be a lunatic, and to have been in the same state of lunacy for the space of one year then last past and upwards.
At the time of the conveyance, the complainant gave a mortgage upon the premises for five thousand seven hundred and fifty dollars of the purchase money. The mortgage debt is now past due, and payment has been demanded. The complainant proffers himself ready to pay the purchase money, but alleges that his title is imperilled by the inquisition and decree of this court, and asks either that his title shall be declared valid, or that it shall be set aside, the bond and mortgage of the complainant given for the purchase money ordered to be given up to be cancelled, and the parties restored to the condition in which they were before the purchase.
That the complainant’s title is clouded, and its security imperilled by the proceedings and decree of this court, cannot be questioned. The date of the conveyance is overreached by the inquisition of lunacy. If it be said that the terms of the inquisition, “ a year and upwards,” do not necessarily cover the date of the conveyance, which was a year and fourteen days prior to the date of the inquisition, still the language is broad enough for that purpose, and may *394 operate as prejudicially to the complainant’s rights as though the inquisition in unequivocal terms overreached the date of the conveyance. Taken in connection with the proceedings in the cause, with the facts stated in the petition, and with the omission of the usual clause of the inquisition, that the lunatic had or had not aliened any of his lands during his lunacy, the inquisition must prejudice the security of the complainant’s title, to what extent it is not material to decide. Upon a bill filed on behalf of his heirs to avoid the title on the ground of lunacy an issue would be awarded. Upon that issue the inquisition is competent evidence. It would throw the burthen of proof upon the purchaser. No statute of limitations runs against the lunatic. A bill to set aside the title on the ground of the lunacy of the vendor may be filed ten, twenty, or even thirty years after the date of the conveyance, when the witnesses may be dead or the recollection of facts have partially or totally perished. In the recent case of Price v. Berrington, the conveyance was made in 1809. A commission of lunacy issued against the vendor in 1837, and he was found by the inquisition to have been a lunatic without a lucid interval from the year 1796. In 1836, a bill was filed in the Court of Chancery to set aside the conveyance. In 1840, an issue was directed to try the lunacy. In 1848, the issue was tried, and lunacy found by the jury, and in 1849, the deed of 1809 was declared void as against the grantor and his representatives. And although this decree was subsequently reversed upon appeal, the case affords a striking illustration of the extent to which questions touching the lunacy of a grantor, may cloud and imperil a title. . 7 Hare 3943 Maenagh § Gor. 486.
It was objected, upon the argument, that the inquisition was not competent evidence against third persons. But the rule is well settled, both at law and in equity, that an inquisition of lunacy, though not conclusive, is competent evidence in proof of the lunacy against persons claiming title under the alleged lunatic. Sergeson v. Sealey, 2 Atk. 412; Frank, v. Mainwaring, 2 Beav. 115; Hale v. Warner, 9 *395 Vesey 609; Phil. & Amos on Ev. 545; Covenhoven’s Case, Saxton 27; Whitenack v. Stryker, 1 Green’s Ch. R. 28; Den v. Clark, 5 Halst. 217; Hart v. Deamer, 6 Wend. 497.
It is upon this ground that a court of equity will in its discretion permit a purchaser, whose conveyance is overreached by the inquisition, to traverse the finding of the jury upon his agreeing to be bound by the final decision .upon the traverse. Buller’s N. P. 216; In the matter of Christie, 5 Paige 242; In the matter of Covenhoven, Sax-ton 27.
The frame of this bill is unusual, and so far as I am aware without a precedent. This fact alone constitutes no objection to the relief sought, if it can bo supported upon principle.
If a bill were filed by or on behalf of the lunatic, to avoid the conveyance on the ground of lunacy, and the lunacy were established, the court, on setting aside the conveyance, would release the purchaser from the payment of the purchase money.
On the other hand, whore a vendor is found a lunatic from a date subsequent to the time of the contract to purchase, but prior to the execution of the conveyance, the purchaser may enforce the completion of the contract by a bill for specific performance. Owen v. Davies, 1 Ves. sen. 82; Hand v. Warren, 9 Vesey 605; Pegge v. Skynner, 1 Cox’s Ch. C. 60.
And where the vendor is by an inquisition found lunatic from a date prior to the contract of purchase, the other party may file a bill for specific performance, and obtain an issue to inquire whether the defendant was a lunatic, or whether the contract was executed during a lucid interval; and if the issue be found in his favor, he may have a decree for specific performance. So he may ask in the alternative to have the contract either performed or discharged. Frost v. Beavan, 17 Pur. 369, (19 Eng. Law and Eg. 25); Fry on Spec. Perform. 73.
Yor will a court of equity, on the application of the luna *396 tic, or those claiming under him, set aside a contract over- . reached by an inquisition of lunacy, if the purchase be fair, .for a full consideration, and without notice of the lunacy to the purchaser, especially where the parties cannot be fully reinstated in the condition in which they were prior to the purchase. Sergeson v. Sealey, 2 Atk. 412; Neill v. Morley, 9 Vesey 478; Price v. Berrington, 3 Macnagh & Gor. 486.
These cases show the ground upon which courts of equity proceed in dealing with contracts overreached by inquisitions of lunacy, and sustain the principles of the present bill. The complainant is entitled, if he have acted in good faith, either to have the contract confirmed, and his title declared valid, or to have it declared null and void, and to be released from the obligation of his contract. He ought not to be compelled to fulfil the contract on his part while his title is clouded and its validity imperilled by the proceedings of this court.
The evidence fully sustains the allegations of the complainant’s bill, that at the date of the conveyance, on the fourth of April, 1859, the defendant was not lunatic, but was .of sound mind, and fully capable of the government of himself and of the management of his affairs and business. There is, indeed, no conflict in the evidence upon this point aside from the inquisition itself and the affidavit of the petitioner, .upon which the inquisition was issued. The testimony of the family of the lunatic, of his physicians, and of his neighbors and acquaintances, clearly proves that at the date of the conveyance, and for some time thereafter during a period clearly overreached by the inquisition of lunacy, the defendant was fully capable of transacting business. This fact is fully corroborated by the answer, and by the testimony of the son of the defendant, upon whose testimony the inquisition issued, and who is now the guardian of the lunatic. He asserts that the averment in the petition, that the lunacy of .his father commenced two years prior to that date was unintentionally and erroneously made, and that in point of fact his lunacy was not clearly developed nor his incapacity for *397 business manifested until tbe autumn succeeding the date of the commission. Under these circumstances, an issue to inquire as to the lunacy is unnecessary.
ETor do I deem the existence of the lunacy at the date of the conveyance, on the fourth of April, a controlling circumstance in the cause. The proof is clear that the executory contract to purchase, made on the nineteenth of February,
1859, was made by the complainant in good faith and for a full and fair price when the lunacy of the defendant was neither known nor suspected; that the contract was executed on the fourth of April, in like good faith on the part of the complainant, without the knowledge or belief of the existence of incapacity on the part of the defendant. Under those circumstances, upon the strength of the authorities already cited and the clear dictates of justice, the contract would be upheld and enforced, even though the incapacity of the grantor at tbe date of the conveyance should be established.
The decree will be made without the allowance of costs to either party as against the other.