FREDERIC W. STEVENS, EUGENE STEVENSON, EDMUND B. LEAM-
ING, JAMES E. HOWELL, VIVIAN M. LEWIS, JOHN H.
BACKES, JOHN GRIFFIN, JOHN E. FOSTER AND
MERRITT LANE, VICE-CHANCELLORS.

In the matter of the release or relinquishment of the right of
dower of CORNELIA G. MARTIN, in a part of certain lands
whereof her husband, Luther Martin, died seized.

[Decided July 7th, 1916.]

1. It is fundamental that in every proceeding of a judicial nature it
is essential that the person whose rights are to be affected should be a
party to the proceeding, and have an opportunity of making a defence.

2. The presence of a guardian before the court to represent a lunatic
is essential, and the guardian can only be appointed when the lunatic is
before the court as a party.

3. A lunatic, like an infant, is served personally with process, and such service should be in the presence of some competent person.

4. A dowress must be made a party to any suit affecting her dower.

5. *Quære:* Could service of process on a confirmed and dangerous lunatic dowress be dispensed with in a case affecting her right of dower.

6. Under the fourteenth amendment to the constitution of the United States, to constitute a valid judgment there must be a competent tribunal within whose jurisdiction the defendant must be brought by service of process within the state, or by his voluntary appearance.

7. Process is the means of compelling a defendant to appear in court. It need not necessarily be a *subpœna* or other *writ*. It may be an order or notice.

8. Every state has the power to prescribe the reasonable notice which shall be given in order to subject a defendant to the jurisdiction of its courts.

---

On motion for an order of reference to a master.

*Mr. Alfred S. March* and *Mr. I. Benjamin Gluckfield,* for the petitioners.

WALKER, CHANCELLOR.

The petitioners have filed a petition for the purpose of obtaining a release or relinquishment of the right of dower of a dowress alleged to be incapacitated by mental infirmity or disease from executing a valid release or relinquishment of the same, pursuant to section 28 of the statute entitled "An act relative to dower" (*Comp. Stat. p. 2052,* amended by *P. L. 1915 p. 396,* but not so as to affect this application), and move for a reference to a master under the second section of that statute— no notice to the dowress of the intended application or of having a guardian *ad litem* appointed for her having been given; and the question arises whether the motion should be granted without notice to the dowress, and whether the relief ultimately sought should be granted without her being made a party to the proceedings and being represented by guardian before the court.

It is fundamental that in every proceeding of a judicial nature it is essential that the person whose rights are to be affected should be a party to the proceeding and have an opportunity of making a defence.

This rule was declared with great emphasis and comprehensiveness by Chief-Justice Green in *Hess* v. *Cole, 23 N. J. Law 116* (at *p. 124*). There, a decree of the orphans court setting off dower was declared void, upon the ground that a party whose interests were affected by it had not been served with notice of the intended application for the appointment of commissioners, as required by the statute in that behalf. And there the chief-justice was not content to rest the decision of the supreme court upon the failure to give notice to the party to be affected by the intended application as required by the express provisions of the statute, but went further, and rested the decision upon the broad ground of the clearest principles of justice, irrespective of the statutory requirements, and irrespective of a summary way of proceeding, or otherwise requiring the giving of such notice, saying (at *p. 124*):

"Every common law record shows upon its face that the defendant was either in custody, or was summoned or attached to answer to the action. And, however inconvenient may have been the strictness with which the principle was applied, and the extent to which it was enforced in ancient common law proceedings, the principle itself is by no means peculiar to the common law. It pervades, in fact, every mode of law and every well-regulated system for the administration of justice.

"The time and the manner of the notice, whether it shall be actual or constructive, whether personal or otherwise, are subjects of legislative control, founded upon consideration of policy or expediency. There are modes prescribed by statutes arising from the necessity of the case, in which judgments may be recovered without notice to the defendant. But in the absence of statutory provisions it is an inflexible rule of law, as well as the clear dictate of justice, that no man shall be deprived of his rights, either of person or property, without an opportunity of being heard. It is not enough that the court have jurisdiction of the subject-matter; they must also have jurisdiction of the person. In every proceeding of a judicial nature it is essential that the person whose rights are to be affected should be a party to the proceeding and have an opportunity of making a defence."

And further continuing as to the effect of the want of such opportunity, the chief-justice said (at *p. 125*) :

"As it appears expressly by the plea that no notice was given to the plaintiff, William Hess, of the application to the orphans court, as it does not appear that he became in any way a party to those proceedings, the decree of the orphans court, so far at least as it operates upon his rights, is null and void."

Now, what are the rights of the dowress to be affected under the statute invoked?

The estate or interest of a widow in lands in which she is entitled to dower, is the right to have one-third set off to her by metes and bounds, and to enjoy the same for her natural life.

It would be unjust to her to take away that right when the clear yearly income is greater than the yearly interest on the substituted bond or fund, for the sake of promoting a sale in the interest of the owner of such lands. It would be equivalent to giving the property of one person to another. *Haulenbeck* v. *Cronkright, 23 N. J. Eq. 407* (at *p. 410*). And, although the statute mentions only the interests of the owners, nevertheless, it must be construed, I think, as having regard to the interest of the person entitled to the right of dower.

The first section of this statute makes it lawful for the chancellor to direct a release or relinquishment of her dower to be made by a master, whose deed, executed in behalf of the dowress mentally incapacitated, shall release and bar all the dower or estate in dower to which such person is entitled in lands, whenever it shall appear to the chancellor's satisfaction that "the interests of the owners of such lands and premises require and would be promoted by a sale of the same."

And the second section directs that upon a petition filed for that purpose, the chancellor may, in a summary way, proceed to inquire into the merits of the application by reference to a master, or otherwise, and in case the release is ordered by him in conformity with the prayer of the petition, a bond shall be given to the chancellor, or guardian of such person, in such penalty and with such surety as he may direct, to secure to the guardian of such person so entitled to dower the enjoyment during her life of a fund equal to one-third of the whole pro-

ceeds of sale of the lands and premises', or, in lieu of such bond, if it shall appear satisfactory to the chancellor, the sum of one-third of the whole proceeds of sale shall be invested under his direction, and the interest thereof shall go to the widow during her life, or a sum in gross may be accepted.

From this examination of the statute in question it clearly appears that the rights of the dowress will be affected if the prayer of the petition be granted by barring the estate of dower given her by the general act relative to dower (*Comp. Stat. p. 204 § 1*), and substituting something else in lieu thereof, and that therefore it is essential that she should be a party to the proceeding now before the court, and have an opportunity of making defence within the rule declared in *Hess* v. *Cole,* and that notice to her should be given of the intended application, although no such notice is required by the statute under which the petition is filed, and that, if she be shown to be incapacitated by mental infirmity, a guardian *ad litem* should be appointed for her by whom she may appear and answer and defend.

A decree cannot be made as to any person who is not a party to the suit. *Armstrong* v. *Armstrong, 19 N. J. Eq. 357; Collins* v. *Kiederling,* opinion by the chancellor not yet reported. See, also, *Cooper* v. *Wallace, 55 N. J. Eq. 192, 196.*

It seems to be thought that this summary proceeding, looking to an adjudication with reference to the rights and interests of incapacitated parties, may be had without notice to them. This cannot lawfully be done. The presence of a guardian before the court to represent an incapacitated party is essential, and the guardian can only be appointed when the party is before the court. How the party is brought in will be treated of presently.

A reported case under the statute referred to is *In re Booskirk, 24 N. J. L. J. 591.* Upon the filing of the petition in that case, Chancellor McGill made an order appointing the clerk in chancery guardian *ad litem* for Mrs. Booskirk, a lunatic, who had an inchoate right of dower in the lands of her husband, which he desired to sell, and in the same order referred the matter to Special Master Martin P. Grey, afterwards one of the vice-chancellors. The guardian appeared by counsel before the

master and made certain contentions, and the master reported in favor of granting the prayer of the petition, and a decree for the conveyance of the wife's inchoate dower was consequently made. An examination of the files of that case shows that the guardian was appointed for the wife upon the case of lunacy made against her by the *ex parte* proofs annexed to the petition, and without any notice of the proceeding to her. I do not think the learned chancellor went far enough, and I am unwilling to hold that such a proceeding may be had without notice to the person entitled to the right of dower, inchoate or consummate; and this for reasons presently to be stated.

In *Van Horn* v. *Hann, 39 N. J. Law 207*, Mr. Justice Reed, writing the opinion of the supreme court, says (at *p. 213*):

"The common law rule is, that a lunatic defends in the same manner as ordinary persons. Process is served upon him personally; then, if an infant, he appears by guardian, and if of full age, by attorney.

"This rule seems as old as *Beverley's Case, 4 Coke 124b*. See *1 Tidd Pr. 93 note b; 1 Arch. Pr. 25; 2 Saund. 333 note 4*, and cases cited in *Combs* v. *Janvier, ante*. This was the rule in actions at law.

"In suits in equity, the practice is different. In those the lunatic defends by guardian *ad litem*, and his committee is appointed such guardian as of course (*Westcomb* v. *Westcomb, 1 Dick. 233*), unless there is no committee, or the committee is, in interest, adverse to him in the suit. *Shelf. *425; Morgan's Case, 3 Bland Ch. 332*. Then a third party is appointed."

The question now arises, How is the guardian of the lunatic to be appointed? The answer, I think, is perfectly plain. It is that the guardian may only be appointed upon the lunatic being brought in as a party. In *Dick. Ch. Prec. (rev. ed.) 105*, in *note (a)*, it is said:

"An idiot or lunatic (so found by inquisition) must defend by the guardian of his estate, who, as well as the idiot or lunatic, is a necessary party to the suit. *Mit. Pl. 23, 82; Story Eq. Pl. § 70*. Lunatics (not so found) and other imbecile persons must defend by guardian appointed for the purpose of the suit."

In the same work, *Dick. Ch. Prec.* (*rev. ed.*), treating of process for appearance, the learned author says, in *note* (*a*), on *p. 19:*

"Service against an infant is to be made on the infant personally. This appears to be the English practice. See *Garnum* v. *Marshall, 1 Dick. 77; Baker* v. *Holmes, 1 Dick. 18.* In *Cooper* v. *Green, 2 Add. Eccl. 454,* it was held that process served on a minor must be made in presence of his natural or legal guardian. The service of a subpœna upon the mother or father-in-law of an infant was, on motion for that purpose, allowed where the mother secreted the infant parties to the suit. *2 Mad. Ch. Pr. 247.* But in *Mortimer* v. *Cropsey,* where the mother concealed the infant, a motion was made that service upon her be deemed good service. The chancellor refused it, and ordered that publication be made under the statute as for a concealed defendant, stating that upon the expiration of the allotted time, if no appearance was entered, the court would appoint a guardian *ad litem.* A similar course was pursued where the non-resident defendant was a lunatic. *1 Hoffm. Ch. Pr. 194.* \* \* \* A lunatic, like an infant, is served personally and it should be in the presence of some competent person."

And in the same work—at *p. 647 note* (*a*)—reads as follows:

"(*a*) Ten days' notice of the taking of the inquisition shall be given to the person who is the subject thereof; the chancellor, however, may, for good reasons, allow shorter notice or dispense with notice altogether. Proof of the giving of the notice shall be filed with the inquisition, and in case less than ten days' notice has been given, or no notice at all, the reasons therefor shall appear by affidavit, to be filed with the inquisition. *Rule 173.* The want or defect of notice is not aided by the alleged lunatic appearing before the jury and attempting a defence. An inquisition taken without due notice will be set aside and a new commission awarded. *Ex parte Whitenack, 3 N. J. Eq. 252.* In cases of confirmed and dangerous madness, notice may be dispensed with, but then only by the express order of the court. *In re Vanauken, 10 N. J. Eq. 186.* Before entering upon the examination, the commissioners should require due proof of the service of notice on the lunatic."

If, as was held in *Vanauken, an alleged lunatic, 10 N. J. Eq. 186,* a person on trial under a commission of alleged lunacy has a right to be present and make his defence, surely an alleged lunatic, whose right of dower is sought to be changed from that of the enjoyment of part of the lands of her deceased husband into a sum in cash equal to the value of her dower, has a right to be heard upon that question by her guardian; and, the guar-

dian can only be lawfully appointed on notice to her, for, in the first instance, she had a right to defend on the question of lunacy, an adjudication of which must precede, or at least be contemporaneous with the appointment of a guardian.

It is not averred in the case at bar that the lunacy of the subject of the .inquiry, the dowress, is of such character as would authorize the dispensing with notice under the *Vanauken Case* and the rule of court. Therefore, no case is made for dispensing with notice of these proceedings to her, even assuming that service on a confirmed or dangerous lunatic would be dispensed with in this class of cases. If service upon a mere infant in its mother's arms is essential to the jurisdiction of the person of the infant, I do not see why the same sort of service is not essential to jurisdiction over the person of a lunatic, even if dangerously mad. The incapacity and inability of either is equally great, and the fundamental requirement of notice would seem to be also equally great.

*In re Alexander, 53 N. J. Eq. 96,* was a case under the statute here invoked, before it was amended, and in that case a guardian *ad litem* was appointed for the lunatic wife. And Vice-Chancellor Green held (at *p. 100*) that a dowress must be made a party to any suit affecting her dower. The act, as it originally stood, provided for the involuntary alienation, through a master in chancery, of an *inchoate* right of dower for which a wife, by mental infirmity or disease, was incapacitated from executing a valid release or relinquishment (*Gen. Stat. p. 1281 § 28*); but. now the relief is extended to the case of *a right of dower,* without its being restricted to an inchoate right. *Comp. Stat. p. 2052 § 28.* The dower in the case before me, by reason of the death of the husband of the dowress, has become consummate and has ripened into an estate.

Chapter 28 of the laws of 1915 (*P. L. 1915 p. 57*) provides that whenever it shall be made to appear to the chancellor by verified petition that a resident of this state is an idiot or lunatic, and that no inquisition has issued to determine the same, and that such person is possessed of real and personal property and no guardian has been appointed for him, it shall be lawful for the chancellor to ascertain in a summary manner

the truth of the petition and to appoint a guardian for such idiot or lunatic. In that act, as in the one before the court in the present case, no notice is directed to be given to the person who is the subject of the inquiry, and whose rights are to be affected, and the proceedings looking to the adjudication are not set forth. As soon as that statute was invoked this court found it necessary to hold that in the absence of provision as to what the proceedings under it should be, they should be the same as in like cases, which were regulated by rules 172, 178. See the opinion of Advisory Master Buchanan, *In re Foran, 85 N. J. Eq. 288,* which I adopted as the opinion of this court. While that opinion does not in terms state that notice must be given to the alleged lunatic, the rules referred to require it, and in the order of reference in the *Foran Case,* it was expressly provided that the master should cause ten days' notice of the time and place appointed for hearing to be given to Foran.

Chief-Justice Green's remark, in *Hess* v. *Cole, 23 N. J. Law* (at *p. 124*), that "there are modes prescribed by statutes arising from the necessity of the case, in which judgments may be recovered without notice to the defendant," it seems to me could only have referred to actions strictly *in rem,* which are distinguished from those against a person, in vindication of a pre-existing right in or to property primarily liable, by seizure and prosecution of such property, without any suit against its owner. *Wapp. Proc. in Rem* § *20.* See, also, *1 Cyc. 730.*

The fourteenth amendment to the constitution of the United States, providing "nor shall any state deprive any person of life, liberty or property, without due process of law," has been held to mean that to constitute a valid judgment there must be a competent tribunal within whose jurisdiction the defendant must be brought by service of process within the state or by his voluntary appearance. *9 Fed. Stat. Anno. 431; Pennoyer* v. *Neff, 95 U. S. 714; 24 L. Ed. 565; M'Guinness* v. *M'Guinness, 72 N. J. Eq. 381, 387.* Process need not necessarily be a subpœna or other writ. An order of the court of chancery directing a receiver to take possession and convert the goods of a corporation into money has been held to be process. *Wood* v. *McCardell, &c., Co., 49 N. J. Eq. 433.* See, also, *Weinstein* v.

*Herman, 81 N. J. Eq. 286.* And the proceedings may be summary. Vice-Chancellor Stevenson, in *Pierce v. Old Dominion, &c., Smelting Co., 67 N. J. Eq. 399,* observes (at *p. 410*) that every state has the power to prescribe the reasonable notice which shall be given in order to subject a defendant to the jurisdiction of its courts, and that it is of no consequence what the form of the notice may be, citing authorities. Speaking of the summary proceedings for the winding up of insolvent corporations, at the bottom of *p. 409,* the learned vice-chancellor remarks that the court gains jurisdiction in that class of cases by giving reasonable notice to the defendant corporation and that no process need be issued. A more accurate statement doubtless would have been that no process by way of *writ of subpœna* was required to be issued in this class of cases, and that reasonable notice to the defendant was process in and of itself. Process is the means of compelling the defendant to appear in court. *3 Bl. Com. 279.* In *2 Bouv. L. Dic. (Rawles' rev.) 766,* one of the definitions of process is, "a writ, warrant, subpœna or other formal writing issued by authority of law."

An order will be made on Mrs. Martin to show cause why the prayer of the petitioners' petition should not be granted and why an order should not be made directing the release or relinquishment of her dower to be made by a master of the court of chancery, according to the statute in such case made and provided, a certified copy of the petition and affidavits and of the order to be served personally upon her. If, upon the return of the order, Mrs. Martin does not appear, the clerk of the court will be assigned and appointed guardian *ad litem* to appear and answer for her. An order of reference will then be made to a special master and the matter may be brought on for a summary hearing.