MARY N. BUNTING

*v.*

ANNA MAY BUNTING and MARTIE BUNTING.

[Decided January 6th, 1917.]

1. A solicitor cannot obtain authority to acknowledge service of *subpœna ad respondendum* for an infant defendant, not even from the infant, as he is incompetent to employ a solicitor and voluntarily appear.

2. An incapacitated party defendant should be brought into court by adverse proceedings.

3. An infant defendant to a bill, who was between fourteen and twenty-one years of age, and for whom an acknowledgment of service was endorsed upon a *subpœna ad respondendum* by a solicitor, was given notice of an application for the appointment of a guardian *ad litem*, and, on the day specified for the application, the infant not appearing, an order was made appointing the clerk of this court guardian *ad litem* for her, by whom she might appear and answer and defend the suit, and who, the guardian, entered an appearance and filed for her the usual formal answer submitting her to the judgment of the court and praying that her interest in the premises might be protected and saved to her.— *Held,* that the proceeding for the appointment of a guardian being in and of itself regular, the infant is now in court and under its protection. *In re Martin, 86 N. J. Eq. 265,* distinguished.

4. A guardian *ad litem* is appointed for the purpose of placing an infant within the jurisdiction of the court. Per Chancellor Zabriskie in *Colgate* v. *Colgate, 23 N. J. Eq. 372, 383.*

5. The defendants are an adult and an infant. A decree *pro confesso* was regularly entered against the adult and it was ordered that the complainant proceed to take depositions and other evidence to substantiate and prove the allegations in her bill and to bring on the hearing of the cause *ex parte*. By the established practice this required the complainant to go before a master and adduce proofs, who, the master, would have been obliged to summon the guardian of the infant before him. In such a proceeding the guardian, who had answered for the infant, could have cross-examined the witnesses and produced proofs in her behalf. The testimony and exhibits offered, if any, would have had to be submitted to the court to pass upon. Instead of doing this, the complainant filed two *ex parte* affidavits to prove her cause of action, and the advisory master recommended the making of a decree for the complainant and against both defendants, which was accordingly done.—*Held*, that the final decree thus made against the infant is invalid and must be vacated and set aside.

6. So far as a case concerns an infant defendant, it cannot be said to be strictly *ex parte*. As it affects his rights it is only in the nature of an *ex parte* proceeding. Where an infant defendant is before the court represented by a guardian, as he always must be, the court protects his interests, and, in a sense, represents him. And where doubtful and difficult questions are involved the court will appoint counsel to represent the guardian. In such case the proceeding becomes essentially litigious and must be regularly brought on for hearing.

7. Ordinarily, the successful party in a litigated matter, whether on interlocutory or final hearing, is entitled to costs. But in cases where the court has discretion, costs should not be awarded in proceedings taken to correct an error of law made by the court. Although the erroneous proceeding was taken by the complainant, the court made the decree in question, and as the solicitors of the complainant in an entirely open and ingenuous way convinced the advisory master that the complainant was entitled to the relief she sought on the record, and the court made the decree advised by the master, the complainant ought not to be mulcted in costs for the court's error; therefore no costs will be awarded to either party on the motion to open and vacate the decree as to the infant defendant.

---

On application to open decree and let in defence.

*Mr. Ellis L. Pierson,* for the motion.

*Messrs. Geraghty & Weelans, contra.*

WALKER, CHANCELLOR.

The bill in this case was filed to obtain a lien in the form of a mortgage on the premises therein described, and to compel the defendants, Martie Bunting and Anna May Bunting, to execute such bond and mortgage.

On December 31st, 1914, James N. Bunting, since deceased, purchased a lot of land in Trenton for $2,200, subject to a mortgage of $1,000. The bill alleges that at the time of the purchase of the lot mentioned, the complainant, Mary N. Bunting, requested James N. Bunting (who was her son) and Martie Bunting, his wife, one of the defendants, to execute a bond in her favor in the penal sum of $2,000 and a mortgage to secure the same on the lot described for $1,000, to run for one year from January, 1915, with interest at six per cent. per annum, payable semi-annually, but not alleging that he owed the money; that at the request of James N. Bunting, since deceased, William G. Howell prepared the bond and mortgage mentioned, but that Bunting departed this life without having executed them; that he died intestate leaving him surviving his widow, Martie Bunting, and his daughter, Anna May Bunting, a minor, the defendants.

A *subpœna ad respondendum* was issued directed to the defendants and was returned with an acknowledgment of service for both endorsed thereon by a solicitor of this court. The bill alleges that the defendant Anna May Bunting is a minor under the age of twenty-one and above the age of fourteen years. The solicitor had no authority to acknowledge service for the infant defendant. If the infant directed the solicitor to acknowledge service for her, it was, nevertheless, a nullity, because an infant is incompetent to employ a solicitor and voluntarily appear. *Lang* v. *Belloff, 53 N. J. Eq. 298.* Doubtless, the solicitor was ignorant of the fact that the defendant Anna May Bunting was a minor, and I have no doubt he acted in perfect good faith.

An incapacitated party defendant should be brought into court by adverse proceedings. *In re Marlin, 98 Atl. Rep. 510, 513.* After the time limited for answer under the subpœna had expired, a decree *pro confesso* was entered, which recited that subpœna for the "defendants" to answer had been duly issued and returned with acknowledgment of service by a solicitor for "the defendant," and further recited that the defendant Martie Bunting, the adult, had not appeared and answered, and thereupon it was ordered that the complainant's bill be taken as confessed against her, to the end that such decree might be made

against *her* as the chancellor should think equitable and just; and it was further ordered that the complainant proceed to take depositions and other evidence to substantiate and prove the allegations in her bill and to bring on the hearing of the cause *ex parte.* Prior to the entry of the decree *pro confesso* the usual notice to the infant, she being between fourteen and twenty-one years of age, was given of an application for the appointment of a guardian. On the day specified for the application, the infant not appearing, an order appointing a guardian was entered. It recited that she had been served with process to appear and answer to the complainant's bill (which was not the fact) and that she had neglected to apply for the appointment of a guardian to defend the suit. Robert H. McAdams, Esquire, clerk of this court, was thereupon in the order assigned and appointed her guardian by whom she might appear and answer and defend the suit. The guardian *ad litem* entered an appearance and filed for her the usual formal answer submitting the infant to the judgment of the court and praying that her interest in the premises might be protected and saved to her.

A preliminary question is here presented. It is: Can a guardian be appointed for an infant who is not regularly in court in a cause? I am sure that if this situation fell under the notice of the court, in the first instance, as it did (*In re Martin, supra*), a guardian would not have been appointed, but the complainant would have been given leave to bring in the defendant in adverse proceedings—that is, by service of process upon her as a step preliminary to proceedings for the appointment of a guardian. But after the court has taken the infant under its protection, the case is different. In *Beddinger* v. *Smith, 13 S. W. Rep. 735,* the supreme court of Arkansas, on a bill filed to set aside a decree for want of service on certain minor defendants, held, that as the record showed that a guardian *ad litem* was appointed for them, who accepted the appointment and filed their answer, and the decree recited that the cause was heard upon their answer, such recital was conclusive as to service of legal notice on the minor. That is not exactly this case, but it is a declaration that when the infants have been protected to the full extent to which they are entitled, the decree against them

will not be set aside for want of service of original process upon them.   See *Manson* v. *Duncanson, 166 U. S. 533; 41 L. Ed. 1105.*

It is the duty of the court to protect the interest of an infant party to litigation, and to exercise a general supervision over the conduct of the next friend or guardian *ad litem.* *22 Cyc. 531.* This oftentimes results in the appointment by the court of counsel to represent guardians *ad litem,* and, through them, the actual parties, the infants.  See *Colgate* v. *Colgate, 23 N. J. Eq. 372.*  This was done in this case on application of the guardian when it was ascertained that a final decree had passed against the infant without the guardian having been heard.

Chancellor Zabriskie, in *Colgate* v. *Colgate, 23 N. J. Eq.* (at p. *383*), in directing a guardian *ad litem* to employ proper counsel, approved by the court, to represent the infant, said that the guardian *ad litem,* who was the clerk of the court, was appointed *pro forma* only for the purpose of placing the infant within the jurisdiction of the court.

I am of opinion that when the court appoints a guardian *ad litem* for an infant defendant, upon proceedings for that appointment which are in and of themselves regular, the infant is then in court and under its protection, although he is not regularly in court under initial process.  And this, too, in analogy to the case of an infant who is brought into court by its next friend when the infant is a complainant, for in such a case the infant does not voluntarily appear but is brought into court by *prochein ami,* who is a person who undertakes to prosecute a suit in behalf of the infant, commonly called "next friend." When the infant is a complainant he does not appear of his own volition, nor is he brought in on adverse proceedings.  Whether complainant or defendant, he is brought in involuntarily and is represented before the court by next friend, if complainant, or guardian *ad litem,* if defendant, who, the *prochein ami* or guardian, as the case may be, must protect the infant's interest under the sanction of the court who is the ultimate protector of the incapacitated party.  There is little, if any, difference between the functions of a next friend and a guardian *ad litem.*

I hold, therefore, that this defendant is now properly before the court represented by her guardian *ad litem.* And this holding is not in conflict with the decision in *In re Martin, supra.* There a petition was filed to obtain a release or relinquishment of the right of dower of a doweress incapacitated by mental infirmity or disease from executing a valid release or relinquishment herself. The solicitors of the petitioners (owners of the fee) moved for a reference to a master, no notice to the doweress of the intended application or of having a guardian *ad litem* appointed for her having been given. She was not even made a party to the proceedings. I held that she should be brought into court on adverse proceedings, and that then a guardian would be appointed for her. I rested the decision very largely upon the opinion of Chief-Justice Green in *Hess* v. *Cole, 23 N. J. Law 116,* in which he observed that in every proceeding of a judicial nature it is essential that the person whose rights are to be affected should be a party to the proceeding and have an opportunity to make defence. In the case presently before me the infant is made a party to the proceeding, and, although not regularly subpœnaed, has had a guardian appointed for her on due notice. I repeat what I said before—that is, had the abortive attempt to bring in the infant defendant been noticed before the guardian was appointed, that appointment would not have been made, but, having been made and the infant's appearance having been entered by her guardian and an answer having been put in for her by him, she, being a party to the proceeding, is now before the court and with opportunity afforded her to make defence by guardian and counsel of the court's selection. More she could not have, no matter what the form of the proceedings.

There is, however, a radical defect in the proceedings in the cause, one which requires that the *ex parte* decree against the infant shall be opened to permit her guardian to interpose a defence. It is this: The complainant should have adduced proofs to substantiate and prove the allegations of her bill by taking depositions before a master of the court who would have been obliged to summon the guardian of the infant before him. In such a proceeding the guardian who had answered for the infant could have cross-examined the witnesses and produced proofs on

her behalf. The testimony and exhibits offered, if any, would then have had to be submitted to the court to pass upon. Instead of doing this the complainant filed two *ex parte* affidavits to prove her cause of action, and the advisory master recommended the making of a decree, and such was accordingly made and filed.

The complainant's solicitors seem to have misconceived the scope of the authority to take depositions contained in the decree *pro confesso* and order for proofs. There are two kinds of proceedings in court *inter partes:* one litigious and the other non-litigious, or *ex parte.* In litigated cases the practice which universally obtained in this court before the advent of vice-chancellors and advisory masters was, after the pleadings were at an end, for the complainant to give notice of the taking of testimony before an examiner of the court, and, after his testimony was closed, the defendant gave a similar notice and took and closed his testimony. The cause was then set down for hearing before the chancellor, and the pleadings, depositions and exhibits were produced before him and the arguments of counsel were heard and considered. In *ex parte* cases, then, and still, the proofs were and are not taken orally before a judge of the court, but are by the court directed to be taken by the litigating party. In pursuance of this direction the party goes before a master of the court and examines his witnesses, whose depositions are taken down in writing by the master or a stenographer under the rules, and are returned into court, together with the exhibits offered, if any, and all are then considered by the court. Where there are infant defendants, the practice is, and always has been, to summon the guardian *ad litem* of the infants before the master conducting the examination of the witnesses. Even in *ex parte* foreclosure suits the interlocutory decree directs the master to whom the cause is referred to ascertain and report any such matter as he may deem proper or which shall appear for the benefit of the infant defendants. The established practice of taking depositions before a master in *ex parte* cases was entirely ignored and set at naught by the filing of *ex parte* affidavits looking to the establishment of the complainant's claim and the entering of a decree thereupon. Besides, so far as a case con-

cerns an infant defendant, it cannot be said to be strictly *ex parte*. As it affects his rights it is only in the nature of an *ex parte* proceeding. Where an infant defendant is before the court represented by guardian, as he always must be, the court protects his interests, and, in a sense, represents him. And where doubtful and difficult questions are involved, the court, as seen, will appoint counsel to represent the guardian. In such case the proceeding becomes essentially litigious and must be regularly brought on for hearing.

The conclusion reached is, that while the infant defendant is now in court, represented by a guardian *ad litem,* who has filed a formal answer for her, the decree made against her is invalid and must be vacated and set aside. Although the formal answer filed on behalf of the infant defendant is doubtless sufficient to permit her guardian to raise in her behalf all of the substantive questions suggested in the recitals in the order to show cause why the decree should not be set aside, and as ground therefor, nevertheless, the guardian will have leave to file a litigious answer. This would be the fairer course toward the adversary party, as the grounds of defence should be stated in a pleading. There is no reason why an answer should not be speedily filed. The guardian will be given ten days in which to file such pleading; and the cause may then be brought on for hearing before a vice-chancellor.

Ordinarily, the successful party in a litigated matter, whether on interlocutory or final hearing, is entitled to costs. But in cases where the court has discretion, costs should not be awarded in proceedings taken to correct an error of law made by the court. See *Lynch* v. *Public Service Railway Co., 83 N. J. Law 783.* This court has discretion to award or withhold costs on the pending motion. Although the erroneous proceedings were taken by the complainant, the court made the decree in question upon the advice of the advisory master who examined the case and recommended that the decree be made. And the court, as usual, adopted the view of the master as contained in his advisory certificate without reviewing the case (*Gregory* v. *Gregory, 67 N. J. Eq. 7*), and the error became in the last analysis, that of the court. It was a pure error of law, and, as the solicitors of.

the complainant in an entirely open and ingenuous way convinced the advisory master that the complainant was entitled to the relief she sought on the record before the court, the complainant ought not to be mulcted in costs for the court's error. Therefore, no costs will be awarded to either party on this motion.