If this memorandum is perchance destined to circulate beyond the attention of counsel of record, I ought at the beginning to explain that in the consideration of the present applications I am concerned with two interrelated alleged causes of action.
The recognizable situation is that in the year 1930 one Anna Mieczkowski, who will hereinafter be designated as the "ward," originated a savings account with the First National Bank of South River. On August 7th, 1947, in the course of an appropriate proceeding in this court (Docket 158, page 180) the jury announced a finding that the ward "was at the time of taking said inquisition a mental incompetent and of unsound mind and does not enjoy lucid intervals * * *; that she has been in the state of mental incompetency for the space of twenty-eight years last past and upwards * * *." That finding was confirmed by a decree of this court bearing date September 3d 1947, and on September 16th, 1947, Joseph Mieczkowski, a son of the ward, was duly appointed her guardian.
In 1947 and before the inception of this litigation, Frank Mieczkowski, another son of the ward with whom she was residing, died intestate. His administratrix in her representative capacity asserted a claim to the savings account founded upon an insistence that the ward had made a gift of the account to her deceased husband, Frank, whose estate she had undertaken to administer. The guardian of the ward, although he does not desire any immediate withdrawal of the savings account, nevertheless has declared that the account is the property of the ward and has protested against its payment to the administratrix of his brother's estate.
Confronted with the disinclination of the bank to disburse the account to her, the administratrix filed her bill of complaint to invite this court to determine the ownership of the account. Cf.Schippers v. Kemphes, 67 Atl. Rep. 1042; affirmed, 72 N.J. Eq. 948; 73 Atl. Rep. 1118. It is a matter *Page 369 
of present significance that the administratrix named as defendants in her suit the bank and the guardian of the ward.
Thereupon the bank filed a bill of interpleader against the administratrix and the guardian as defendants. The solicitors of the guardian challenge the propriety of the filing of such a bill by the bank and move to dismiss it. Their motion is entitled to prevail.
It is evident that the parties in interest were joined in the suit instituted by the administratrix, and in such circumstances the institution of another cause by the filing of a bill of interpleader on behalf of the bank was unnecessary in order to provide adequate protection to the bank as the stakeholder.
Where the disinterested holder of a fund is already a party to a suit in equity, brought by one claimant against the other to settle as between the claimants the controversial right to the fund, it is in accordance with proper practice in a court of equity for the holder of the fund to petition in the same cause for permission to pay the fund into court and to be discharged and absolved from further liability. G.P. Farmer Coal and SupplyCo. v. Albright, 89 N.J. Eq. 283; 104 Atl. Rep. 224; 2 Barb.Ch. Pr. (2d ed.) 120; Dan. Ch. Pr. (6th ed.) 1567; Lane
v. New York Life Insurance Co., 9 N.Y.S. 52. Cf. McGuinness v.Taylor, 138 N.J. Eq. 548, 550; 49 Atl. Rep. 2d 251. Such a course of procedure is available to the bank.
I deny the motion to strike the bill filed by the administratrix. In its apparent substance, it seems to allege a cause of action maintainable in this court under the authority ofSchippers v. Kemphes, supra. The basis of the attack upon this bill is that this court takes notice of its own files (Inre Queen, 82 N.J. Eq. 583, 588; 89 Atl. Rep. 290) and is accordingly aware of the finding of the jury in the proceedings in 1947 that the ward suffered a loss of mental competency at a time anterior to the opening of the savings account; hence, the ward by reason of her lack of mental capacity could not have made a valid gift of the account as alleged in the pleading. *Page 370 
The argument rests upon a misapprehension of the force and effect properly to be ascribed to the adjudication of mental incompetency.
By the common law, the King's officers, his sheriff, coroner, and escheator, were bound virtute officii to make inquiry concerning any matter which gave the King a title to the possession of lands, tenements, goods and chattels. On special occasions, writs were directed to them to make the inquiry. When idiots and lunatics came within the jurisdiction of the crown, the King's title was determined in like manner by these officers, assisted as in other cases by a jury of the county, whose verdict was named an inquisition or inquest of office. The inquiry was more frequently initiated by commission because it was of a broader and more general nature. The early commissions normally addressed to five persons as commissioners, directed them "to inquire upon the oaths of good and lawful men of the county, as well within the liberties as without, by whom the truth of the matter may be better known, whether the party against whom the commission has issued be an idiot and without understanding from his nativity or a lunatic, or in the enjoyment of lucid intervals, so that he is not sufficient for the government of himself, his manors, messuages, lands, tenements, goods and chattels; and if so, from what time, after what manner, and how."
Evidently there never has been much doubt concerning the admissibility of an inquisition of lunacy in evidence in any litigation to indicate the person's mental condition at the time. But the degree of the evidential potentiality of the adjudication, particularly in its retrospective relevancy, soon engaged judicial consideration. Sergeson v. Sealey (1742, Lord Hardwicke), 2 Atk. 412; Hall v. Warren (1804), 9 Ves.605.
In 1828 our Supreme Court was concerned with the validity of a mortgage executed on February 15th, 1812. The defendant to impeach the mortgage, introduced in evidence a commission of lunacy, and an inquisition thereon, taken on March 30th, 1824, whereby it was found that the mortgagor was on that day a lunatic, of unsound mind, and not enjoying *Page 371 
lucid intervals, and had been in the same state of lunacy for the space of sixteen years then last past and upwards. The court resolved that an inquisition of lunacy is not conclusive against any person not a party to it. Den v. Clark, 10 N.J. Law 217.
Such has been the uniform course of our adjudications. Yauger
v. Skinner, 14 N.J. Eq. 389, 394; Hill's Ex'rs v. Day, 34 N.J. Eq. 150; Brady v. McBride, 39 N.J. Eq. 495; Mott v. Mott,49 N.J. Eq. 192, 196; 22 Atl. Rep. 997; Kern v. Kern, 51 N.J. Eq. 574; 26 Atl. Rep. 837; American National Red Cross v. Lester,129 N.J. Eq. 28; 18 Atl. Rep. 2d 295; East Paterson v.Karkus, 136 N.J. Eq. 286, 290; 41 Atl. Rep. 2d 332, and cases there cited.
I desire, however, to remind counsel that the guardian of anon compos has no title to the property of his ward, either in trust or otherwise. The guardian of a lunatic is a mere curator of the ward's property. Cooper v. Wallace, 55 N.J. Eq. 192;36 Atl. Rep. 575.
In the cause prosecuted by the administratrix the ward is not a party. Therefore a decree purporting to establish an adverse interest in her savings account would be ineffectual against the lunatic herself. To obtain the desired relief the alleged lunatic is an indispensable party. Van Horn v. Hann, 39 N.J. Law 207;Hurey v. Leavitt, 93 N.J. Law 299; 107 Atl. Rep. 457; In reMartin, 86 N.J. Eq. 265; 98 Atl. Rep. 510; Hoffman v. Kahn,119 N.J. Eq. 171; 181 Atl. Rep. 527.
Appropriate orders in accord with these conclusions will be advised. *Page 372