This is a suit brought by the guardian of one Charles Peter, a lunatic, praying that there be annulled and canceled a note made by Peter for the sum of $2,000 payable in six months, and that an action at law brought on the note be restrained.
The note was dated the third day of March, 1929, and a decree adjudicating him a lunatic was entered on November 14th, 1929, based on an examination made on September 12th, 1929. A commission found that he had been of unsound mind for a period of more than three years. It is well settled that such a finding is not in anywise conclusive as to the mental condition of the subject of the inquiry at any time prior to the determination of lunacy.
In In re Coleman, 88 N.J. Eq. 578 (at p. 579), the court holds: *Page 457 
"The finding of a lunacy commission as to the mental state of the testator was not conclusive but only prima facie evidence of the facts found and may be overcome by satisfactory evidence of capacity at the time the will was made." Eckman v. Wood,108 N.J. Law 105.
However, the testimony convinces me that Peter was incompetent for at least a considerable period prior to the execution of the note. There was medical testimony to the effect that at the time of his appearance before the lunacy commission six months after the execution of the note, his mental condition had been such for a long time that he was not capable of managing his affairs. Besides this, there was considerable evidence as to his habits and mode of life which indicated his want of capacity. For several years he had been slovenly, dirty and unkempt, and he had no occupation, but wandered around aimlessly and on at least one occasion he had appeared in a restaurant improperly dressed. He was unable to select his clothes and was unable to talk intelligently or coherently about anything.
He was the beneficiary of a wealthy estate and received about $90 each week, together with casual considerable larger sums. This money he apparently spent as soon as he received it. He was about seventy years old and has died since the instigation of this suit. For many years he spent much of his time with a woman, an aunt by marriage of the payee of the note. This woman had at one time been his mistress and it seems to be substantially conceded that a large part, at least, of the cash that he received went into her hands.
He lived alone and apparently was completely neglected and avoided by his relatives. He was unable to sign his name at the time of the execution of the note. There was apparently no reason for his making a loan and the testimony that he ever actually received the $2,000 for which the note was given is not very satisfactory.
The defendant secured a cashier's check to his own order which he endorsed and turned over to the woman with whom Peter was associated, and the check was cashed by her. The only proof that Peter ever received any money was the testimony of the woman herself that she gave it to him. *Page 458 
The defendant had seen Peter at the home of the woman on numerous occasions, and the conclusion is irresistible, he must have been familiar with his mental condition.
This situation does not bring the present suit within the classifications in which it has been held that a lunatic cannot rescind his contract where he has received the benefit of performance by the other party thereto.
The typical case of this kind is the furnishing of necessaries to the lunatic, as pointed out in Matthiessen and WeichersRefining Co. v. McMahon's Administrator, 38 N.J. Law 536 (atp. 543).
In this case we have a man suffering from an advanced stage of arterio-sclerosis with a slow, but progressive weakening, of his mental faculties which had long previously rendered him almost imbecilic. In receipt of a considerable income, he had evidently been preyed upon by a woman who completely dominated him. Under such circumstances he executed a note for money for which he had no need, at the instigation of the woman under whose control he was. She and the payee of the note persuaded him to execute this unnecessary document, and the loan, if it ever actually reached his hands, cannot be traced.
I find accordingly that Peter was of unsound mind at the time the note was executed; that it was obtained from him by imposition and is void.
Under these circumstances, a decree for the relief prayed for in the bill will be advised. *Page 459