In the matter of the alleged lunacy of MARY ANN LINDSLEY..

An inquisition in the nature of a writ *de lunatico inquirendo* must show that the imbecility of mind is such as to render the imbecile unfit for the govern- ment of himself, as well as of his property.    A return that the imbecile is an idiot, or a lunatic, or *non compos mentis*, or of unsound mind, will be regarded as sufficiently showing this fact, because these terms are technically used to express a deprivation of sense to that degree; but a return, that the party " is not a lunatic, but that her mind is impaired by age and other causes, and that (or, so that) she is not capable of managing her own . affairs " is insufficient, and should be quashed.

On appeal from a decree of the Chancellor, whose opinion is reported in *Matter of Lindsley, 16 Stew. Eq. 9.*

*Mr. Ludlow McCarter*, for appellant.

*Mr. Henry S. Harris*, for respondent.

The opinion of the court was delivered by

DIXON, J.

On the petition of Parmelia L. Nichols, a commission issued out of chancery directing an inquiry "whether Mary Ann Lindsley is a lunatic or of unsound mind, so that she is not fit for the government of herself, her lands and tenements, goods and chattels." To this an inquisition was returned, certifying "that Mary Ann Lindsley is not a lunatic, but that her mind is impaired by age and other causes, and that she is not capable of managing her own affairs." The Chancellor set aside this inquistion because it failed to answer the question put by the commission, pointing out as one defect the omission to state that Mrs. Lindsley's incapacity to manage her affairs arises from the condition of her mind. From the Chancellor's order the petitioner appealed to this court, insisting that the inquisition, when fairly interpreted, and especially in the light of certain statements of the jury returned informally with the inquisition, does signify that Mrs. Lindsley's incapacity to manage her affairs is attributable to the impairment of her mind. We do not deem it necessary to pass upon this claim of the appellant, for, assuming it to be well founded, there still remains a defect in the inquest which justifies the Chancellor's order.

The inquiry directed was whether Mrs. Lindsley was a lunatic or of unsound mind, so as to be unfit for the government of *herself*, her lands &c.; the response, even as interpreted by the appellant, does not touch the question whether she is fit for the government of *herself*. We think, that, under the laws of this State, mental incapacity to that extent must be found in proceedings like the present.

It is clear that, at the time of the Revolution, the English court of chancery required that the return should show that the individual was so far bereft of reason as to justify his being deprived of power over both his person and his estate. A return that the party was an idiot, or a lunatic, or *non compos mentis*, or of unsound mind, was sufficient, because each of those terms imported such a deprivation of sense as rendered the sufferer unfit for self-control, as well as for the management of his affairs. *Ex parte Barnsley, 3 Atk. 168; 1 Coll. on Lun. 148; Shelf. on Lun. *108*. These words were not absolutely essential, but, if omitted, words of equal significance were required, Lord Hardwicke saying (*3 Atk. 171*): "It is not a variance in the words, but in the sense and meaning, that will quash the inquisition." Our first statute after the revolution was "An act for supporting idiots and lunatics, and preserving their estates," passed Nov. 21st, 1794, (*Pat. 125*), which was evidently an adaptation to our institutions of chapters 9 and 10 of *17 Edw. II., de Prerogativa Regis. (Shelf. on Lun. 315)*. Although this enactment, by its terms, includes only idiots and lunatics, yet in construction it, no doubt, should embrace those *non compos mentis*, or of unsound mind, to whom its prototype had been judicially extended. Following this, came the supplement of March 1st, 1804 (*Bloomfield 117*), which directed that all cases of idiocy or lunacy should be determined by an inquest on a commission of idiocy or lunacy issued by the Chancellor; that the proceedings should be filed with the surrogate of the county in which the idiot or lunatic resided, and that the orphans court of that county should appoint a guardian or guardians who should have the care and provide for the safety of such idiot or lunatic, his or her lands, tenements, goods and chattels. Our existing statute, passed February 28th, 1820, is substantially the same (*Elm. Dig. 237; Rev. 601*). This state of the law plainly leads to the conclusion that the mental imbecility to be established is such as calls for guardianship over the person as well as over the estate of the imbecile.

The form of the judicial inquiry under these statutes, commencing with that of *17 Edw. II.*, is to the same effect. The

ancient writ issued to inquire whether the party "*Fatuus et idiota existit: ita quod regimini sui ipsius, terrarum, tenementorum, et cattallorum suorum, non sufficit.*" *1 Coll. on Lun. 117.* So the commission, which in England superseded the writ, and which has been adopted here, invariably covers the idea of the fitness of the alleged imbecile for self-government. Such a practice would not have obtained, and have been observed so persistently, unless this idea had been deemed important, and I think there is no case in our reports, where an inquisition has been accepted and acted upon, which did not, either by the technical words above mentioned, or by some other clear form of expression, indicate that the subject of the inquest was incapable of governing himself as well as his affairs. *Covenhoven's Case, Sax. 19; Vanauken's Case, 2 Stock. 186; James's Case, 8 Stew. Eq. 58.*

In *Perrine's Case, 14 Stew. Eq. 409, 411*, Chancellor Runyon said that it is enough to warrant the interference of the court, if, from any cause, whether by age, disease, affliction or intemperance, a person has become incapable of managing his own affairs; and he referred for support to Lord Eldon, in *Gibson* v. *Jeyes, 6 Ves. 266*, and Chancellor Kent, *In re Barker, 2 Johns. Ch. 232.* But I apprehend that, in these cases, the attention of the judges was turned more to the source and nature of the mental imbecility than to its extent, and that they must not be understood as holding that weakness of mind which, though it rendered a person incapable of managing his affairs, did not amount to idiocy or lunacy, or unsoundness of mind (in the technical sense of those terms), and did not deprive him of the power of governing himself, would justify a court in placing him and his estate under guardianship. The opinions of Lord Lyndhurst, *In re Holmes, 4 Russ. 182*, and of Chancellor Walworth, *In re Morgan, 7 Paige 236*, indicate that such is not the law, either in England or New York. Lord Eldon himself, in *Sherwood* v. *Sanderson, 19 Ves. 280, 286,* declared it to be settled that, if the jury merely find the incapacity of the party to manage his affairs, and will not infer, from that and other circumstances, unsoundness of mind (which he said has the same effect as idiocy or lunacy), though the party may live where he is exposed to

ruin every instant, yet upon that finding the commission cannot go on. ·

For the reason, therefore, that the jury did not find that Mrs. Lindsley was an idiot, or a lunatic, or of unsound mind, or that her mind was so impaired as to render her incapable of governing herself as well as her property, we think that the inquisition did not justify the appointment of a guardian both of her person and of her estate, as the statute requires, and hence that it was properly set aside.

*Decree unanimously affirmed.*