A petition is presented by the wife of the defendant Jacob S. Karkus in which she prays that a guardian ad litem be appointed to answer the bill of complaint and otherwise advocate the interests of her husband in this cause. The application rests solely upon the disclosure that at the instance of the Veterans Administration of the United States, the Orphans Court of the County of Middlesex on or about February 5th, 1945, declared this defendant to be an incompetent veteran incapable of the management of his affairs, and appointed the present petitioner his guardian to receive the moneys payable to him by the federal agency. R.S. 3:27-1 et seq.; N.J.S.A. 3:27-1 et seq.
It is asserted on behalf of the complainant that the defendant is at present actually engaged in the practice of law and that his mind is neither so enfeebled nor disordered as to warrant the appointment of a guardian to represent him in the pending cause. The reasons for the opposition to the appointment may be surmised, such as the situation typified by Griffin v.Londrigan, 107 N.J. Eq. 76; 151 Atl. Rep. 611.
Of course, it is well understood that persons compos mentis
must themselves defend, and persons non compos must defend through a guardian. I have observed, however, the existence *Page 288 
of some incertitude among some of our solicitors concerning the procedural character of the inquiry to be pursued in this court on an application for the appointment of a guardian ad litem
for a party alleged to be mentally incompetent where no commission de lunatico inquirendo has been previously issued.
The deduction inferred from the conclusion in the case of Inre McLaughlin, 87 N.J. Eq. 138; 102 Atl. Rep. 439, that the Chancellor cannot in a summary manner inquire into the sanity of a person (P.L. 1915 ch. 28 p. 57) seems to have generated the notion among some that to warrant the appointment of a guardianad litem for a mentally deficient party, an adjudication of the insanity of the party on a commission in the nature of a writ ofde lunatico inquirendo must have preceded or be contemporaneous with the appointment of the guardian ad litem. Not so. Undoubtedly this court may, where the special circumstances so recommend, stay the prosecution of a cause until such a direct inquisition has been made. Cf. Warker v. Warker, 106 N.J. Eq. 499,502; 151 Atl. Rep. 274; affirmed, 109 N.J. Eq. 106;156 Atl. Rep. 647.
Assuredly, there can be no adjudication in the present cause so comprehensively establishing the insanity of the defendant that he would be restrained of his liberty or deprived of the control of his property and the management of his personal affairs. Such an adjudication must be sought in a constitutional manner in a proceeding instituted for that purpose. R.S. 3:7-35 et seq.;N.J.S.A. 3:7-35 et seq.; In re McLaughlin, supra. There is a notable and significant dissimilarity between the conventional inquisition on commission and an application, as here, which is calculated only to insure the protection of the rights and interests of a party evidently incompetent to prosecute or defend the particular suit. See In re Rhodes, 100 N.J. Eq. 370;136 Atl. Rep. 408.
To warrant the appointment of a guardian ad litem to protect a party against the consequences of his mental incompetency, it is not necessary that the party shall have been adjudicated an idiot or lunatic. It is sufficient if the proof makes it evident that the party from any cause, whether by *Page 289 
age, disease, affliction, or extreme intemperance, has become incapable and unfit for the government of himself and his property. Conover's Case, 28 N.J. Eq. 330; Perrine's Case,41 N.J. Eq. 409; 5 Atl. Rep. 579; In re Lindsley, 43 N.J. Eq. 9;10 Atl. Rep. 549; affirmed, 44 N.J. Eq. 564; 15 Atl. Rep. 1; Webb
v. Webb, 96 N.J. Eq. 1; 124 Atl. Rep. 706. Courts are zealous to safeguard the personal and property rights of incompetent parties, and if it is supposed that Chancery is even more solicitous, it is because the Chancellor is the general guardian of all infants, idiots, and lunatics, and when they are summoned before this court, the jurisdiction parens patriae also obtains.
The appointment of a guardian ad litem is made under the inherent jurisdiction in Chancery. Necessarily the court must be informed of the incompetency of the party. If the complainant knows that the defendant, against whom he seeks relief, is mentally incapable of defending the suit, and if no one on behalf of the defendant has acquainted the court with the defendant's incompetency, the obligation then devolves upon the complainant to so inform the court. The procedure is essentially analogous to that adopted on applications for the appointment of guardians adlitem for infant defendants. The factual justification for the appointment of a guardian ad litem must be established in either circumstance. In the one the fact of infancy must be proved; in the other, the fact of incompetency and unfitness to defend must be made evident. Ammon v. Wiebold, 61 N.J. Eq. 351; 48 Atl. Rep. 950.
The application under modern practice is initiated by the presentation of a petition by the father, mother, wife, husband, or indeed next friend of the incompetent party, or by the complainant. The petition should of course be accompanied by proof ordinarily in the form of ex parte affidavits tending to disclose the mental infirmity, imbecility, or other mental unfitness of the party. Where the alleged incompetency of the party is exceedingly controversial, the court may find it feasible to refer the subject to a master, or may hear the testimony of witnesses viva voce in open court.
Whether the petition is made by the complainant or by someone on behalf of the defendant, due and reasonable *Page 290 
notice of the application must be given to the party whose mental competency is to be ascertained. Such notice is ordinarily indispensable. Pierson v. Hitchner, 25 N.J. Eq. 129; In reMartin, 86 N.J. Eq. 265; 98 Atl. Rep. 510; Hess v. Cole,23 N.J. Law 116; Dickinson's Pl. Pr. 54, footnote; 1 Daniell's Pl. Pr. 531, *534.
In some instances there may have been a previous judgment of incompetency. An adjudication by a court vested with appropriate jurisdiction establishing the insanity of a person is competent evidence of the mental condition of the person at the time when the judgment was rendered. Sbarbero v. Miller, 72 N.J. Eq. 248; 65 Atl. Rep. 472; affirmed without opinion, 74 N.J. Eq. 453; 77 Atl. Rep. 1088; In re Coleman's Estate, 88 N.J. Eq. 284;103 Atl. Rep. 521; affirmed, Ibid (at p. 578);103 Atl. Rep. 78; Turner v. Cole, 116 N.J. Eq. 368; 173 Atl. Rep. 613;affirmed, 118 N.J. Eq. 497; 179 Atl. Rep. 113; Peter v.Englert, 118 N.J. Eq. 456; 180 Atl. Rep. 228; In re Rule,125 N.J. Eq. 255; 5 Atl. Rep. 2d 64; Leick v. Pozniak,135 N.J. Eq. 67; 37 Atl. Rep. 2d 302; Coombs v. Witte,104 N.J. Law 519; 140 Atl. Rep. 408; Eckman v. Wood,108 N.J. Law 105; 154 Atl. Rep. 862. Moreover, it conveys with it a presumption of the continued existence of that condition.Coombs v. Witte, supra; Boylan ads. Meeker,28 N.J. Law 274. However, neither the judgment nor the presumption is conclusive. Leick v. Pozniak, supra; Eckman v. Wood, supra
(at p. 108). Where there has been such an adjudication and a committee or general guardian of the person and his estate has been previously appointed, this court in ordinary circumstances will as a matter of course designate the committee or general guardian of the incompetent party to conduct the defense.Mitford's Tyler's Pl. Pr. in Eq. 200; Story's Eq. Pl.
(10th ed.), § 70; Westcomb v. Westcomb, 1 Dickens 233;21 Eng. Rep. 257; In re Martin, supra. Such a designation will not of course be made where it appears that the interests of the committee or general guardian in the cause are likely to be oppugnant to those of the ward. Mitford's Tyler's Pl. Pr. inEq., supra; Story's Eq. Pl., supra: 1 Whitehouse Eq. Pr. 67 § 48;In re Martin, supra. *Page 291 
Reverting now to the characteristics of the immediate application, the obstruction first encountered is the absence of proof of any notice whatever to the defendant of the proposed inquiry concerning his mental condition to defend. Notice and an opportunity to be heard are essential.
Moreover, the proof of mental incompetency accompanying the petition is scanty. True, annexed to the petition is a certificate of the surrogate of the County of Middlesex "that Letters of Guardianship of the person and property of Jacob S. Karkus, an incompetent, have been duly granted to Blanche P. Karkus," and "said Letters of Guardianship stand unrevoked and in full force and effect." The information derived from the context of the petition discloses that the proceeding resulting in the issuance of the letters was pursued under the authority of the statute known as "Uniform Veterans' Guardianship Law," which in purpose and intent contemplates the appointment of a guardian for a special purpose. Indeed, the estate entrusted to the guardian is defined by the statute to "include only moneys received by the guardian from a federal agency and earnings, interest and profits derived therefrom." R.S. 3:27-2; N.J.S.A. 3:27-2.
Sufficient of the record of the proceeding is not authentically supplied to enable one to ascertain whether the defendant had been "rated incompetent by a federal agency on examination in accordance with the laws and regulations governing such agency * * *" (R.S. 3:28-6; N.J.S.A. 3:28-6); or had "been duly committed to an institution for the care of mental incompetents pursuant to the laws of this state * * *" (R.S. 3:29-3; N.J.S.A.3:29-3); or "confined in a United States military, naval or marine hospital * * *" (R.S. 3:29-5; N.J.S.A. 3:29-5); or whether his mental incompetency was resolved upon "affidavits made by two medical officers of the army, navy or marine service, or of a federal agency * * * or on such other facts as shall satisfy the court of such incompetency" (R.S. 3:29-4; N.J.S.A.3:29-4). It is not divulged whether the inquiry was conducted with or without a jury. (R.S. 3:29-2; N.J.S.A. 3:29-2.) The proof in its existing posture is more inexplicable than informative. *Page 292 
In such circumstances the application will be retained and continued until Tuesday, March 13th, 1945, at which time, upon notice to the defendant, the parties may introduce more definite and explicit proofs.