212 N.J. Super. 408 (1986)
515 A.2d 276
IN THE MATTER OF GEORGE CLARK.
Superior Court of New Jersey, Chancery Division Camden County.
Decided May 15, 1986.
*411 Betty S. Adler for Cooper Hospital/University Medical Center (Archer & Greiner, attorneys; Betty S. Adler, of counsel; Gary J. Lesneski on the brief).
John J. Mulderig, guardian ad litem for George Clark (Brown & Connery, attorneys).
TALBOTT, J.S.C.
This is a motion for an award of attorney's fees for services rendered as guardian ad litem to George Clark, an allegedly incompetent patient of Cooper Hospital/University Medical Center (Cooper). This attorney represented George Clark in a hearing to determine whether the patient was competent and whether certain life-saving surgery should be performed. See In re Clark, 210 N.J. Super. 548 (Law Div. 1986). Cooper, plaintiff in the underlying action, opposes the award of attorney's fees against the hospital on the ground that there is no authorization under the New Jersey civil practice rules for such an award against a party.
The guardian argues that there is express authorization for the award of counsel fees under R. 4:83-4. The attorneys for the hospital argue that the guardian ad litem's appointment was made pursuant to R. 4:26-2 and that, even if R. 4:83-4 were applicable, it does not provide for the award of fees against a party.
The first issue, therefore, is under which rule the attorney was appointed. While in In re Quinlan, 137 N.J. Super. 227, 236 (Ch.Div. 1975), Judge Muir appointed a guardian ad litem for Karen Quinlan under R. 4:26-2, later in that opinion he considered Mr. Quinlan's application to be appointed guardian *412 of his daughter under R. 4:83-2. Id. at 269. Other court decisions have proceeded under R. 4:83-1 et seq. in matters of this kind. In re Schiller, 148 N.J. Super. 168, 181 (Law Div. 1977) (where there is an application for a guardian the court has authority to appoint an attorney for an alleged incompetent under R. 4:83-4(a)). In re Quackenbush, 156 N.J. Super. 282, 288 (Law Div. 1978) (R. 4:83 governs trial on the issue of mental competency).
An examination of the cases decided under the two rules indicates that R. 4:83-1 et seq., rather than R. 4:26-2, is applicable to this type of appointment. R. 4:26-2 governs the appointment of a guardian to represent the interest of an infant or incompetent person in the context of a particular litigation, while R. 4:83-1 et seq. governs the appointment of general or special guardians, not necessarily in a litigation context. R. 4:26-1 et seq. is in chapter IV of the rules, entitled "Parties." Rule 4:26 is entitled "Parties Plaintiff and Defendant," and all the rules in this section relate to the designation and/or representation of certain parties. (i.e., R. 4:26-1, "Real Party in Interest"; R. 4:26-3, "Virtual Representation of Future Interest"; R. 4:26-5, "Unknown Defendants: In Rem Actions").
Rule 4:26-2 governs the representation "in an action" of an infant or incompetent person by his or her appointed guardian or, if no guardian has been appointed, by a guardian ad litem appointed by the court. R. 4:26-2(b)(1) governs the appointment of a parent as guardian ad litem in negligence actions without court order, while the court may appoint a guardian ad litem upon the petition of an infant, incompetent person or a friend on her or his behalf, R. 4:26-2(b)(3), or upon the court's own motion R. 4:26-2(b)(4). The only function for the court under R. 4:26-2 is to review the application of the proposed guardian ad litem and determine whether that person will adequately protect the party's interest. The court must appoint the proposed guardian ad litem unless it finds good cause for not doing so. A conflict of interest between the party *413 and the proposed guardian ad litem constitutes good cause for the proposed guardian's rejection. The purpose of a guardian under R. 4:26-2 is clearly to protect the infant's or the incompetent person's interests in the course of litigation and "friendly" judgments. See Pressler, Current N.J. Court Rules, Comment 3 to R. 4:26-2 ("... the function of the guardian ad litem is to protect the interests of his ward in respect of litigation.") Cf. In re Commitment of S.W., 158 N.J. Super. 22 (App.Div. 1978):
The function of such guardian is generally to insure the protection of the rights and interests of a litigant who is apparently incompetent to prosecute or defend the lawsuit. An adjudication of incompetency in such instance is not necessary ... the procedure is set forth in R. 4:26-2. [at 25-26]
The Appellate Division differentiated between such guardian ad litem appointments and those where there are greater interests to be protected than a litigant's rights:
But where the effect is to restrain an allegedly incompetent person of his liberty or deprive him of the control of his property and the management of his personal affairs, "[s]uch an adjudication must be sought in a constitutional manner in a proceeding instituted for that purpose." [Id. at 26,] citing East Paterson v. Karkus, 136 N.J. Eq. 286, 288-289 (Ch. 1945) and N.J.S.A. 3A:6-35 et seq.

S.W. was an indigent patient committed to the Essex County Hospital Center who was discharged pending the hospital's finding an appropriate placement for her. The hospital sought the appointment of a guardian ad litem for the sole purpose of signing Medicaid forms for the disbursement of money to enable her placement in a nursing home facility. The patient refused to sign these forms, reportedly because she wished to remain in the hospital. The Appellate Division held:
There can be no doubt that a judicial designation of a person to sign documents on behalf of an adult deprives the latter, to that extent, of the management and control of his personal affairs. This cannot be done without the institution of an action in accordance with R. 4:83 for the determination of his or her mental incompetency and the appointment of a general guardian for that person, the submission of medical proof that the alleged incompetent is unfit and unable to govern himself or herself and to manage his or her affairs, and an adjudication by the court of such incompetency after a hearing. [158 N.J. Super. at 26]
Like the case of S.W., George Clark's case involved the appointment of a guardian to govern the allegedly incompetent *414 patient's personal affairs. Indeed, if the patient were found incompetent, the proposed guardian was to make a decision regarding surgery which would determine whether George Clark would live or die. As the Appellate Division made clear in S.W., such an appointment could not have been made without the procedural safeguards of R. 4:83.
Further support for the proposition that R. 4:83, rather than R. 4:26-2, governs the appointment of a guardian in this case, is the recent adoption of R. 4:83-12. This rule, effective January 2, 1986, provides for the appointment of a special medical guardian to make decisions respecting medical treatment for patients who are unable to consent. The comment indicates that the rule was adopted "to formalize the then existing Chancery practice in respect of special medical guardians generally required in emergent health or life threatening situations." Pressler, op. cit. supra, Comment R. 4:83-12. It is clear that this rule simply codifies cases such as Schiller, Quackenbush and S.W., discussed supra, which apply R. 4:83, rather than R. 4:26-2, to guardianship situations such as those of George Clark. Since R. 4:83-12 simply codifies previously existing case law, it is unnecessary to decide whether that particular rule applies to this motion, filed on February 4, 1986.
The rule governing payment of attorney's fees is R. 4:83-4, which was undisputably in effect at the time of the guardian's appointment in December 1985. R. 4:83-4 provides, in part:
The order fixing the hearing date shall include the appointment of counsel for the alleged incompetent .. . the compensation of any appointed counsel may be fixed by the court to be paid out of the estate of the incompetent or in such other manner as the court shall direct.
Pursuant to this rule, there is clear authority for the awarding of attorney's fees. The only remaining issue is whether such an award may be made against Cooper, plaintiff in the underlying action. The source rule for R. 4:83 is R.R. 4:102. R.R. 4:102-4 made provisions for the payment of counsel fees by one of the parties or out of the estate of the incompetent:

*415 The compensation of such attorney may be fixed by the Court and charged upon such of the parties or out of the estate of the incompetent as the Court shall direct.
Attorneys for the hospital argue that, based on the cases regarding who has standing to bring a competency proceeding the "parties" who would bring this type of action are the incompetent person's relatives. In re Tierney, 175 N.J. Super. 614 (Law Div. 1980), aff'd 177 N.J. Super. 254 (App.Div. 1980). That case has no application to the present situation. Tierney was an action by a childhood friend of the allegedly incompetent person for an adjudication of incompetency and the granting of letters of general guardianship to the complainant. It did not involve the appointment of a special guardian to determine whether a life-saving medical procedure should be authorized or whether certain types of treatment should be provided or withdrawn. Although family members sometimes bring this type of action, In re Quinlan, supra, (father sought to be appointed guardian), it is the hospital in Cooper's position that is often the petitioner before the court. John F. Kennedy Memorial Hospital v. Heston, 58 N.J. 576 (1971) (Action by hospital for appointment of guardian to consent to blood transfusion refused by patient's mother for religious reasons); Barnert Memorial Hospital Assoc. v. Young, 63 N.J. 578 (1972) (Hospital petitioned for appointment of special guardian to consent to amputation of leg of incompetent woman); In re Schiller, supra (Hospital petitioned for appointment of guardian to consent to amputation of gangrenous leg of incompetent man); In re Quackenbush, supra (Hospital sought appointment of guardian to consent to amputation and other medical treatment necessary due to gangrenous condition of incompetent patient's legs). An award of counsel fees for the guardian ad litem was expressly authorized against parties under the former rule, R.R. 4:102-4, and, since hospitals are often petitioners or parties, it therefore follows that fees could be awarded against hospitals.
*416 Contrary to what the attorneys for the hospital argue, the new rule does not restrict, but broadens the court's discretion to award fees. Rule 4:102-4 provides for an award of fees out of the incompetents' estate or "upon such of the parties," while R. 4:83-4 provides for an award out of the estate "or in such other manner as the court shall direct." Cooper's attorneys suggest that the word "manner" signifies method of payment, but such an interpretation is not supported by a plain reading of the rule. Presumably, if the court ordered payment out of the incompetent's estate, there would be a "method" of doing so (i.e., in a lump sum, out of a specific fund). The disjunctive "or" indicates that the rule contemplates fee payments from sources other than the incompetent's estate. The rule gives the court broad discretion, and could support, as Cooper's attorneys argue, an award of fees against a number of persons or entities, including the patient's siblings. However, the court does not have unbridled discretion. Its award of counsel fees is governed by equitable principles. Cooper Hospital, however reluctant, was the petitioner in this action, seeking the court's guidance in a difficult situation. Cooper had an interest in the outcome of this proceeding, and could not have made a decision as to whether or not to proceed with the surgery without exposing itself to liability. Given these circumstances, and the fact that the previous rule expressly authorized an award of counsel fees against a party, an award against Cooper Hospital in this case would not be unreasonable.
The guardian ad litem's affidavit reveals that he spent 41.1 hours in his representation of George Clark. He will be compensated for that time at the rate of $75 an hour. While that hourly rate is lower than the rate usually charged by this attorney, I feel that the circumstances of this case warrant such a rate. This is not a reflection of the quality of the work performed by the guardian, which was excellent, but of the fact that the guardian originally expected to serve pro bono. The guardian ad litem is therefore awarded counsel fees in the amount of $3,082.50.