**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5525-13T2

S.T.,

    Plaintiff-Appellant/
Cross-Respondent,

v.

1515 BROAD STREET, LLC,
THE WALSH COMPANY, LLC,
and COUNTY GLASS & METAL
INSTALLERS, INC.,

    Defendants-Respondents,

and

COUNTY GLASS & METAL INSTALLERS, INC.,

    Third-Party Plaintiff-Respondent,

v.

VIRGINIA GLASS PRODUCTS,

    Third-Party Defendant,

and

IDESCO CORP.,

    Third-Party Defendant-
Respondent/Cross-Appellant.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **August 6, 2018** |
| **APPELLATE DIVISION** |

Argued September 26, 2017 — Decided August 6, 2018

Before Judges Carroll, Leone, and Mawla.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-1651-10.

Stephen R. Bosin argued the cause for appellant/cross-respondent (Stephen R. Bosin, attorney; Robert A. Vort, on the briefs).

Gerard H. Hanson argued the cause for respondent/cross-appellant Idesco Corp. (Hill Wallack, LLP, attorneys; Gerard H. Hanson, of counsel and on the brief; James Harry Oliverio, on the briefs).

Peter A. Gaudioso argued the cause for respondent County Glass & Metal Installers, Inc. (McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys; Peter A. Gaudioso, of counsel and on the brief).

Matthew S. Mahoney argued the cause for respondent 1515 Broad Street, LLC (Linda Baumann, of counsel; Matthew S. Mahoney, on the brief).

Michael C. Urciuoli argued the cause for respondent The Walsh Company, LLC.

The opinion of the court was delivered by

LEONE, J.A.D.

Plaintiff S.T. appeals from a July 1, 2014 order approving a settlement in this litigation and directing the distribution of settlement proceeds. She argues the settlement was improperly approved on her behalf by a guardian ad litem (GAL) appointed under Rule 4:26-2.

We hold that under Rule 4:26-2(a)(4), a trial court may appoint a GAL if there is good cause to believe that a party

lacks the mental capacity needed to participate in the litigation. We also hold that, based upon the GAL's investigation or other information, the court may give the GAL the power to make decision(s) needed in the case, including the decision to try or settle the case, if it finds clear and convincing evidence that the party is mentally incapable of making the decision(s). Because the trial court properly found that plaintiff lacked the mental capacity to decide whether to try or settle the case, we affirm.

## I.

Plaintiff's complaint alleged as follows. On March 11, 2008, she was a business invitee on the premises at 1515 Broad Street in Bloomfield. When exiting the building, she was struck on the head by a falling object and sustained severe and traumatic injuries. As a result, she suffered and continued to suffer great pain and anguish, confinement, and incapacitation for her usual course of conduct and employment.

Plaintiff, represented by trial counsel, filed a complaint alleging negligence by defendants 1515 Broad Street, LLC (1515 Broad), The Walsh Company, LLC (Walsh), and County Glass & Metal Installers, Inc. (County Glass). County Glass filed a third-party complaint against Virginia Glass Products Corp. (Virginia

Glass) and Idesco Corp. (Idesco). Plaintiff amended her complaint to add Virginia Glass and Idesco as defendants.

A Law Division judge denied Idesco's motion for summary judgment, and its motion for reconsideration. We denied its motion for leave to appeal.

The judge dismissed plaintiff's claims against Virginia Glass. The remaining defendants filed a joint offer of judgment for $475,000. They gave plaintiff until ten days before trial to accept, or they would seek costs and fees under Rule 4:58-3.

As the trial date approached, plaintiff's trial counsel filed a motion and certification seeking the appointment of a GAL for plaintiff. On September 27, 2013, the trial court entered an order appointing Frederick D. Miceli, Esq. as GAL, and staying the trial pending the GAL's review of the matter.

On March 17, 2014, the GAL issued his report. In light of the findings in the GAL's report, the trial court's April 22, 2014 order ruled the GAL should remain, and "empowered and entrusted [the GAL] with any and all decisions regarding the ultimate disposition of this case, whether by trial or settlement."

At a July 1, 2014 hearing, plaintiff's trial counsel, the GAL, and defendants reported they had arrived at a $625,000 settlement. The trial court approved the settlement as fair,

reasonable, and in plaintiff's best interests. Plaintiff appeals, represented by new counsel. Idesco filed a contingent cross-appeal of the denial of summary judgment and reconsideration.

## II.

The first issue is what rule governs the appointment of a GAL under these circumstances. Plaintiff's counsel moved for appointment of a GAL, invoking Rule 4:26-2(b)(3). However, Rule 4:26-2(b)(3) applies after a default or in a summary action:

> On motion by a party to the action, the court may appoint a guardian ad litem for a minor or alleged mentally incapacitated person if no petition has been filed [under Rule 4:26-2(b)(2)] and either default has been entered by the clerk or, in a summary action brought pursuant to R. 4:67 or in a probate action, 10 days have elapsed after service of the order.

Neither circumstance was present here.

Nonetheless, plaintiff's counsel could properly bring concerns to the trial court's attention. The Rules of Professional Conduct (RPC) permitted plaintiff's counsel to seek appointment of a GAL. See M.R., 135 N.J. at 175, 178. RPC 1.14 addresses "[w]hen a client's capacity to make adequately considered decisions in connection with the representation is diminished, whether because of minority, mental impairment or for some other reason." RPC 1.14(a). It provides:

> When the lawyer reasonably believes that the client has diminished capacity, is at risk of substantial physical, financial or other harm unless action is taken and cannot adequately act in the client's own interest, the lawyer may take reasonably necessary protective action, including consulting with individuals or entities that have the ability to take action to protect the client and, in appropriate cases, seeking the appointment of a guardian ad litem, conservator, or guardian.
>
> [RPC 1.14(b) (emphasis added).]

Because RPC 1.14 uses the phrase "diminished capacity," plaintiff is incorrect in arguing that phrase may not be used in this context.

The trial court granted the motion without specifying the subsection it relied upon. The court later ordered the GAL to remain pursuant to Rule 4:26-2(b)(4), which provides that a "court may appoint a guardian ad litem for a minor or alleged mentally incapacitated person on its own motion." Because the court ultimately ruled on its own motion under Rule 4:26-2(b)(4), we examine the propriety of its action under that subsection.

However, plaintiff contends that the trial court had to follow the procedures in Rule 4:86 before it could hold she lacked the capacity to handle her own affairs. Thus, she essentially challenges whether the GAL was properly appointed.

Plaintiff misapprehends the differences between appointment of a guardian of the person or property, versus appointment of a GAL. Those differing appointments are governed by different rules, which themselves recognize the distinction. See R. 4:26-2(a) (permitting the appointment of a GAL if no "guardian of either the person or the property" has not been appointed); R. 4:86-4(d) (allowing the appointment of a GAL to assist in the litigation for appointment of a guardian for person or property).

The appointment of a guardian over the person or property of an incapacitated person is governed by Rule 4:86 (formerly Rule 4:83) and N.J.S.A. 3B:12-24 to -35. Appointment of a general guardian under that rule gives the general guardian the authority to "exercise all the rights and powers of the incapacitated person" over their person, property, or both. N.J.S.A. 3B:12-24.1(a). It also gives the general guardian "all of the powers conferred upon the guardian by law and the provisions of this chapter." N.J.S.A. 3B:12-48. Those may include: title in the person's property; control over expenditures for the person; custody of the person; power over the person's property, place of abode, care, and medical care; and the ability to seek the person's admission to a psychiatric facility. E.g., N.J.S.A. 3B:12-38, -43, -56(d), -57(f), -59.

The authority of the guardian lasts until the person's death unless the guardian is removed or the person is restored to competency. N.J.S.A. 3B:12-64.

Because the appointment of such a general guardian has the effect "to restrain an allegedly incompetent person of his liberty or deprive him of the control of his property and the management of his personal affairs, '[s]uch an adjudication must be sought in a constitutional manner in a proceeding instituted for that purpose.'" In re S.W., 158 N.J. Super. 22, 26 (App. Div. 1978) (citation omitted).

> This cannot be done without the institution of an action in accordance with R. 4:83 for the determination of his or her mental incompetency and the appointment of a general guardian for that person, the submission of medical proof that the alleged incompetent is unfit and unable to govern himself or herself and to manage his or her affairs, and an adjudication by the court of such incompetency after a hearing.
>
> [Ibid.]

Thus, Rule 4:86 requires the filing of a complaint alleging incapacity, supported by affidavits or certifications by two physicians, or one physician and a psychologist, giving a "diagnosis and prognosis," opining on the extent to which the person "is unfit and unable to govern himself or herself and to manage his or her affairs," and "setting forth with particularity the circumstances and conduct of the alleged

incapacitated person upon which this opinion is based." R. 4:86-2(a), (b)(2), (b)(2)(D), (F). The court must "determine the issue of incapacity," and if it reaches a "judgment of legal incapacity," shall appoint a guardian over the person or property who must report to the court periodically and "take such steps as are necessary to protect the interest of the incapacitated person" until the person's death or return to capacity. R. 4:86-5(a), (d), (e), (f). The court "must make findings by clear and convincing evidence as to whether the person is incapacitated." In re Guardianship of Macak, 377 N.J. Super. 167, 176 (App. Div. 2005) (citing In re M.R., 135 N.J. 155, 169 (1994)).[1]

The procedures in Rule 4:86 are not required for the appointment of a GAL because it has far fewer consequences and can result in the grant of authority only over the litigation in which the GAL is appointed. "An adjudication of incompetency" does not result from and "is not necessary" for the appointment of a GAL. S.W., 158 N.J. Super. at 26.

---

[1] Because of the breadth of the powers of a general guardian, courts must also consider "the extent to which the alleged incapacitated person retains sufficient capacity to retain the right to manage specific areas, such as residential, educational, medical, legal, vocational or financial decisions." R. 4:86-2(b)(2)(G). If so, the court may grant the guardian more limited powers. See, e.g., N.J.S.A. 3B:12-24.1(b); R. 4:86-1(a).

> The use of the qualifier "alleged" to the use of the term "mentally incapacitated person" in [Rule 4:26-2](b)(2), (b)(3) and (b)(4) is to make clear that in contradistinction to the appointment of a guardian, which requires an adjudication of mental incapacitation, a guardian ad litem's appointment is dependent only upon the allegation of mental incapacitation.
>
> [Pressler & Verniero, Current N.J. Court Rules, cmt. 3 on R. 4:26-2 (2018).]

Moreover, a GAL does not have the same general power over person or property. "[Rule] 4:26-2 governs the appointment of a guardian to represent the interest of an infant or incompetent person in the context of a particular litigation, while [Rule] 4:83-1 et seq. governs the appointment of general or special guardians, not necessarily in a litigation context." In re Clark, 212 N.J. Super. 408, 412 (Ch. Div. 1986), aff'd o.b., 216 N.J. Super. 497, 499 (App. Div. 1987). "[T]he function of a guardian ad litem is only to protect the interests of the ward in respect of the litigation, while taking substantive actions on behalf of the ward is the proper function of his guardian of person or property." Julius v. Julius, 320 N.J. Super. 297, 309 (App. Div. 1999) (citing Pressler, Current N.J. Court Rules, cmt. on R. 4:26-2 (1999)). "The function of" a GAL is merely "to insure the protection of the rights and interests of a litigant who is apparently incompetent to prosecute or defend the lawsuit." S.W., 158 N.J. Super. at 25-26.

Accordingly, the procedures for appointing a general guardian over person or property do not apply to the appointment of a GAL to assist in a particular litigation. Because Rule 4:26-2 is intended to provide a GAL to assist in an already-existing lawsuit, and no finding of general mental incapacity results, no separate complaint need be filed seeking such a finding. Moreover, Rule 4:26-2(b) does not require particular medical proofs. Further, as the powers of a GAL are limited to the litigation, there is no need to consider if the person retains capacity in the other areas listed in Rule 4:86-2(b)(2)(G). Thus, those requirements of Rule 4:86 are inapplicable, and we must instead consider whether the procedures for appointing a GAL under Rule 4:26-2 were satisfied.

## III.

The next issue is the appropriate standard to apply under Rule 4:26-2(b)(4). Generally, Rule 4:26-2(a) provides that

> a minor or mentally incapacitated person shall be represented in an action by the guardian of either the person or the property, appointed in this State, or if no such guardian has been appointed or a conflict of interest exists between guardian and ward or for other good cause, by a guardian ad litem appointed by the court in accordance with paragraph (b) of this rule.

Thus, in the absence of a contravening standard in Rule 4:26-2(b), the trial court may appoint a GAL for an allegedly mentally incapable adult for "good cause." Ibid.; see Zukerman by Zukerman v. Piper Pools, Inc., 232 N.J. Super. 74, 88-89 & n.12 (App. Div. 1989); see also N.J.S.A. 9:2-4 ("The court, for good cause and upon its own motion, may appoint a guardian ad litem or an attorney or both to represent the minor child's interests.").[2]

What constitutes good cause for appointing a GAL for an allegedly mentally incapable adult under Rule 4:26-2(b)(4) has not been recently considered. More than seventy years ago, before the rule was promulgated, the Chancery Court stated that "[i]t is sufficient if the proof makes it evident that the party from any cause, whether by age, disease, affliction, or extreme intemperance, has become incapable and unfit for the government of himself and his property." Borough of E. Paterson v. Karkus, 136 N.J. Eq. 286, 288-89 (Ch. 1945). However, that was the standard for the declaration of lunacy and the appointment of a general guardian. See id. at 289 (citing lunacy cases, e.g., In

---

[2] Rule 4:26-2(b)(2), addressing the appointment of a GAL "upon the verified petition of a friend on his or her behalf," provides that "[t]he court shall appoint the guardian ad litem so proposed unless it finds good cause for not doing so." As no such burden-shifting language appears in Rule 4:26-2(b)(4), the court must find good cause for appointing a GAL under that provision. Cf. Clark, 212 N.J. Super. at 412.

re Alleged Lunacy of Lindsley, 43 N.J. Eq. 9, 10 (Ch. 1887), aff'd, 44 N.J. Eq. 564, 568 (E. & A. 1888)).

The Chancery Court extended that standard to the appointment of a GAL. Ibid. (citing Webb v. Webb, 96 N.J. Eq. 1 (Ch. 1924)). We quoted that standard in S.W., 158 N.J. Super. at 26, and said "[t]he procedure is set forth in [Rule] 4:26-2," but did not consider whether the old standard was compatible with the new rule. Now considering that issue, we conclude that standard for appointing a general guardian is too high for the more limited role of a GAL in a particular litigation. It puts the cart before the horse to require it to be proven that a person lacks mental capacity before appointing a GAL to investigate whether a person lacks mental capacity.

We find guidance in our Supreme Court's more recent cases discussing the role of a GAL. "[T]he basic role of the guardian ad litem is to assist the court in its determination of the incompetent's or minor's best interest." J.B. v. W.B., 215 N.J. 305, 332 (2013) (quoting In re Adoption of A Child by E.T., 302 N.J. Super. 533, 539 (App. Div. 1997), and citing M.R., 135 N.J. at 175). In M.R., the Court noted that GALs assist in two ways.

First, "[t]he GAL acts as an independent fact finder, investigator and evaluator as to what furthers the best interests of the child. The GAL submits a written report to the

court and is available to testify." Id. at 173 (citing Pressler, Current N.J. Court Rules, official cmt. to R. 5:8A & R. 5:8B (1994)). A GAL serves the same function for the alleged mentally incapable person, including investigating the person's mental capacity. Id. at 175. The commentary to Rule 4:26-2 also notes that "[t]he guardian ad litem's responsibility is to advise the court as to whether a formal competency hearing may be necessary and if so, to represent the alleged mentally incapacitated person at that hearing." Pressler & Verniero, Current N.J. Court Rules, cmt. 3 on R. 4:26-2 (2018).

Second, if, after receiving the GAL's report or other information, the trial court agrees the alleged mentally incapacitated person is not capable of making the decision(s) needed in the litigation, the court may grant the GAL the power to make the decision(s). The Court in M.R. noted that, unlike the attorney for the person, "'[t]he guardian ad litem evaluates for himself or herself what is in the best interests of his or her client-ward and then represent[s] the client-ward in accordance with that judgment.'" Id. at 174 (citation omitted). Thus, "the attorney and guardian ad litem may take different positions, with the attorney advocating a result consistent with the incompetent's preferences and the guardian urging a result that is different but in the incompetent's best interests." Id.

at 175; see Village Apartments of Cherry Hill v. Novack, 383 N.J. Super. 574, 579 (App. Div. 2006).

In deciding the appropriate standards to govern these two very different ways in which a GAL assists the court, we must bear in mind the differing rights at issue. Our Supreme Court in M.R. emphasized that "[t]he clear public policy of this State . . . is to respect the right of self-determination of all people, including the developmentally disabled." 135 N.J. at 166 (quoting N.J. Const. art. I, para. 1). Similarly, our Legislature has provided that "[e]very person who has reached the age of majority . . . and has the mental capacity may prosecute or defend any action in any court[.]" N.J.S.A. 2A:15-1.

The "courts have a special responsibility to protect the right of self-determination." M.R., 135 N.J. at 166 (citation omitted). "Traditionally, however, courts have tempered the right of self-determination of incompetent people with concerns for their best interests." Id. at 167; see Novack, 383 N.J. Super. at 578 ("Our courts zealously protect the personal and property rights of incompetent parties."). "The paradox with incompetent people is to preserve as much as possible their right of self-determination while discharging the judicial

responsibility to protect their best interests." M.R., 135 N.J. at 167.

Appointing a GAL to investigate a person's mental capacity does not deprive the person of the right of self-determination. In order to provide the court with any information necessary to protect the person's best interests, the burden to trigger such an investigation should not be onerous. Such an appointment may delay proceedings while the GAL performs the investigation, but the appointment does not empower the GAL to take over the person's decision-making in the litigation. By contrast, empowering a GAL to make decision(s) for the person in the litigation does deprive the person of the right of self-determination. Therefore, it should be governed by the "heavy burden on anyone seeking to overcome the right of self-determination." Id. at 168.

The final lesson we draw from our Supreme Court's decision in M.R. is that the court must specifically determine which if any decisions the person lacks the mental capacity to make, and empower the GAL to make only those decisions. M.R. addressed whether, during a guardianship proceeding under Rule 4:86 for an adult who it was agreed was "'incapable of governing herself and managing her affairs,'" a GAL should be appointed regarding whether she "had the specific capacity to express a preference

16                                                                      A-5525-13T2

to reside with her father." Id. at 159-60, 173-77. The Court emphasized that "the mere fact that a person is generally incompetent does not mean that person is incompetent for all purposes. A person who is generally incompetent can still make choices about specific matters." Id. at 169. Thus, in M.R., the Court ruled that "[i]f the court concludes that M.R. is incapable of deciding where to live, it may appoint a guardian ad litem to represent her best interests." Id. at 178. The Court held that "specific incapacity" to make a particular decision must be shown "by clear and convincing evidence." Id. at 169.

Based on the guidance provided by our Supreme Court in M.R., the ruling on whether to appoint a GAL to investigate a person's mental capacity to make the decision(s) needed in the litigation, and the ruling on whether to empower a GAL to make the decision(s) for the person, should be governed by different standards.

A trial court's ruling on its own motion to appoint a GAL to investigate whether a person is mentally incapacitated under Rule 4:26-2(b)(4) is governed by the "good cause" standard in Rule 4:26-2(a). If there is good cause to believe that the person lacks sufficient mental capacity to make the decision(s) needed to conduct the litigation, the court may appoint a GAL to

serve as an independent investigator, fact finder, and evaluator to report back to the trial court whether the person has sufficient mental capacity. No higher standard should be imposed because such an investigation aids the court in determining if its intervention is needed to protect the rights of the alleged mentally incapacitated person, but does not itself deprive the person of the right of self-determination. Thus, we disagree with our 1978 decision in S.W., and disapprove the Chancery Court's pre-1946 decisions in Karkus and Webb, to the extent they suggest that the standard for lunacy must be met before a GAL may be appointed to investigate whether a person lacks mental capacity.

By contrast, a trial court's ruling whether to empower the GAL to make the decision(s) needed in the litigation for an allegedly mentally incapacitated person must be governed by a higher standard because the ruling deprives the person of the right of self-determination. Unlike the standard for appointing a general guardian - that the person "has become incapable and unfit for the government of himself and his property," S.W., 158 N.J. Super. at 26 (quoting Karkus, 136 N.J. Eq. at 288-89); see Webb, 96 N.J. Eq. at 5 - the standard for empowering a GAL should reflect the person's mental capacity to make the specific decision(s) needed in the litigation. Accordingly, the court

must determine that the person is mentally incapable of making the decision(s) needed in the litigation before the court can entrust the GAL to make the decision(s). To ensure that the person's right of self-determination is not improperly overridden, the court must make that ruling by clear and convincing evidence. See M.R., 135 N.J. at 168-69, 171; see also In re Jobes, 108 N.J. 394, 407 (1987).

In deciding whether to appoint a GAL or to empower the GAL to make specified decision(s) needed in the particular litigation which the alleged mentally incapacitated person is not mentally capable of making, the trial court need not and should not determine whether the person is incapable of governing his or her person or property generally. Such a determination would call for the appointment of a general guardian, and should be made in a proceeding under Rule 4:86. Moreover, in determining whether the person is mentally incapable of making the particular decision(s) needed in the litigation, the court should not empower the GAL to make other decisions in the litigation which the person is mentally capable of making. See In re Conroy, 98 N.J. 321, 381 (1985).

IV.

The trial court here issued two separate orders, the first appointing the GAL to investigate, and the second empowering the

GAL to make the decision whether to try or settle the case. In considering those rulings, we must hew to our standards of review.[3]

"The decision to appoint a guardian ad litem is reposed in the discretion of the trial judge, and rightly so because the decision is informed by the experience the judge gains as the judge sifts through a daily docket of contested matters." J.B., 215 N.J. at 333 (citing M.R., 135 N.J. at 179). The decision to empower the GAL to make the decision(s) for the party similarly is reviewed for an abuse of discretion. Those decisions will not be reversed absent an abuse of discretion. See In re Adoption of a Child by J.D.S., 353 N.J. Super. 378, 402 (App. Div. 2002).

As noted above, by a ruling that empowers the GAL to make the decision(s), it must be established by clear and convincing evidence that the person is mentally incapable of making the decision(s) needed in the litigation. We must review any factual findings made by the trial court under the traditional standard used to review factual determinations made by our trial

---

[3] County Glass argues a plain-error standard of review applies because plaintiff failed to object to the motion to appoint the GAL. However, we will not apply that standard because there is no evidence plaintiff's counsel copied her on the motion. In future cases, if counsel for an alleged mentally incapacitated person makes a motion to appoint a GAL, the motion should be served on that person.

courts. Factual "[f]indings by the trial judge are considered binding on appeal when supported by adequate, substantial and credible evidence." Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974). Appellate courts "'do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Ibid. (citation omitted).[4] We must hew to those standards of review.

### A.

In support of the motion for appointment of a GAL, plaintiff's counsel certified:

> We reasonably believe that [plaintiff] has exhibited a diminished capacity and is at risk of substantial financial and psychological/physical harm. We are seriously concerned about [plaintiff's] physical and emotional ability to participate in the prosecution of her case and her ability to attend a lengthy trial. We are also concerned that her capacity to make adequately considered decisions

---

[4] We note that we review for abuse of discretion other procedural decisions which must be supported by clear and convincing evidence. See, e.g., State v. S.N., 231 N.J. 497, 515-16 (2018) (reviewing for "abuse of discretion" the decision whether to detain a defendant pretrial, which must be supported "by clear and convincing evidence that a defendant's danger, risk of flight, and risk of obstruction overcomes the presumption of release").

regarding her case is diminished. Also our ability to communicate with our client . . . and fully explain issues relating to her case is hindered because of her diminished capacity.

Counsel's certification made clear that "[w]e are not suggesting that [plaintiff] is incompetent or that she need a full time guardian appointed to manage her affairs." However, "because of her diminished capacity to understand the issues relating to her case," plaintiff's counsel sought the appointment of a GAL to protect plaintiff's interests in the litigation.

Counsel's certification attached three reports from Dr. Peter M. Crain, plaintiff's psychiatrist who performed a neuropsychiatric evaluation. Dr. Crain found the accident caused "cognitive decline, complicated by the onset of depression." That resulted in her having impaired focus and difficulties with comprehending, retention, and keeping up with verbal information, as well as being "severely impaired emotionally and physically."

Counsel's certification also attached the report of Dr. Paula P. Reid, plaintiff's treating psychologist who performed a neuropsychological evaluation. Dr. Reid found "[a] significant reduction in the predicted intellectual performance on verbal comprehension and processing speed," with "cognitive impairment"

affecting her ability to pay attention and understand complex material, and significant depression which could affect her ability to think clearly. Additionally, counsel's certification attached a more recent neuropsychological report confirming plaintiff's attentional deficits and difficulty in integrating complex materials.

Plaintiff's counsel certified that defendants had retained numerous experts who refuted plaintiff's theory that the accident caused injury, and who concluded any difficulties plaintiff was experiencing were not related to the accident. Plaintiff's counsel certified that counsel had explained the $475,000 offer of judgment, but that "[w]e have grave doubts that [plaintiff] is able to fully grasp and understand the offer itself and/or the potential financial consequences of refusing the Offer of Judgment."[5]

Plaintiff's counsel subsequently provided a new report from Dr. Crain. After a two-hour psychiatric examination of plaintiff on September 13, 2013, Dr. Crain concluded plaintiff had "a diminished capacity to fully consider the risks of her decision making in regard with how to proceed with the case."

---

[5] Under the offer of judgment rules, if plaintiff obtained a money judgment of "80% of the offer or less," plaintiff would have to pay defendants the costs of suit, "all reasonable litigation expenses incurred following non-acceptance," and prejudgment interest. R. 4:58-2, -3.

Counsel's certification and supporting psychiatric and psychological reports provided good cause for the trial court's September 27, 2013 order to appoint a GAL to investigate plaintiff's mental capacity and report to the court.

## B.

The GAL's subsequent investigation provided clear and convincing evidence that plaintiff was mentally incapable of deciding whether to try or settle the case. The GAL reviewed extensive case materials, including the reports of the treating physicians and experts on both sides, and the depositions of plaintiff, fact witnesses, and others. The GAL conducted two interviews with plaintiff in the presence of her trial counsel. The GAL researched the applicable law. On March 17, 2014, the GAL issued his report, which stated as follows.

Plaintiff contended she sustained a traumatic brain injury, and had elevated cerebrospinal fluid, intracranial hypertension, and major depressive disorder. She made over 500 visits to health care providers, was still receiving speech and cognitive therapy, was taking several prescription medications daily, and was awarded permanent disability benefits from the Social Security Administration. The GAL cited the psychiatric reports from Dr. Crain that plaintiff had diminished capacity to consider the risks of litigation, and the psychological reports

from Dr. Reid and others who had found a significant reduction in plaintiff's intellectual performance.

The GAL noted Dr. Reid had engaged counsel and refused to testify on plaintiff's behalf. In her interviews with the GAL, plaintiff could not accept that Dr. Reid would not testify. She could not understand the types of proofs her case required from medical experts. After the second interview, it remained unclear that plaintiff understood what was being explained by the GAL and her trial counsel.

The GAL found plaintiff still refused to accept the doctors who would be testifying, despite an explanation of the discovery rules, the deadlines involved, and the court's orders barring plaintiff from submitting additional experts. The GAL concluded plaintiff did not "have sufficient mental capacity" either to have "the requisite understanding and ability" to make "an informed and a rational decision regarding her case," or to overcome her "intransigent unwillingness to confront the realities of her case." The GAL recommended that he should be entrusted with the decision whether to try or settle the case.

Subsequently, plaintiff had a phone conversation with the GAL asking that he speak to Dr. Reid in another attempt to get her to testify, which proved futile. On June 17, 2014, the GAL issued a supplemental report stating plaintiff continued to

exhibit an inability to accept who would provide expert testimony for her, or understand the factors necessary to weigh the risks and make a decision. The GAL reiterated his conclusion that due to plaintiff's diminished capacity, she "was incapable of making an informed, rational and prudent decision regarding her case."

A party "may be incompetent because [s]he lacks the ability to understand the information conveyed, to evaluate the options, or to communicate a decision." See Conroy, 98 N.J. at 382. Here, the GAL's investigation, findings, and recommendations, coupled with the materials submitted to the trial court by the GAL and plaintiff's counsel, provided clear and convincing evidence that plaintiff was not mentally capable of making an informed decision on whether to try or settle the case. Thus, the trial court did not err in its April 22, 2014 order empowering the GAL to make that decision.

Plaintiff notes that "[m]erely because a settlement is rejected by a [GAL] is not in and of itself a sufficient basis to warrant removal" of the GAL. Zukerman, 232 N.J. Super. at 90. Likewise, merely because a settlement is rejected by a party is not a sufficient basis to warrant appointing a GAL or empowering the GAL to decide whether to settle. It is similarly inadequate to show "a mere difference of opinion [between the

party's counsel and the party] . . . as to whether or not a proposed settlement offer was sufficient, or should be accepted because of the inherent risks of a trial on liability or damages, or both." See id. at 95-96, 98. However, the court properly found that plaintiff lacked the mental capacity to make that decision.

V.

Nonetheless, plaintiff contests the power of the GAL to agree to settle the case. Plaintiff argues that there can be no settlement she did not agree to because "[a] settlement agreement between parties to a lawsuit is a contract," Nolan v. Lee Ho, 120 N.J. 465, 472 (1990), which requires "a 'meeting of the minds' between the parties," Morton v. 4 Orchard Land Tr., 180 N.J. 118, 129 (2004) (citation omitted). She notes that an attorney cannot force a client to accept a settlement.

Those propositions hold true when the party is competent to make the decision whether to settle. However, because the trial court found plaintiff was not mentally capable of deciding whether to try or settle the case, and appointed the GAL to make that decision, the GAL "must of necessity have the sole right to accept or reject a settlement offer." Zukerman, 232 N.J. Super. at 99. Once appointed to make a decision, the GAL "steps into the shoes of the minor" or mentally incapacitated person, Kubiak

v. Robert Wood Johnson Univ. Hosp., 332 N.J. Super. 230, 238 (App. Div. 2000), and makes the decision on behalf of that person, E.B. v. Div. of Med. Assistance & Health Servs., 431 N.J. Super. 183, 209 (App. Div. 2013).

This accords with the law in other jurisdictions. "A guardian ad litem is authorized to act on behalf of his ward and may make all appropriate decisions in the course of specific litigation. For example, notwithstanding the incompetency of a party, the guardian . . . may settle the claim on behalf of his ward." United States v. 30.64 Acres of Land, 795 F.2d 796, 805 (9th Cir. 1986); accord Thomas v. Humfield, 916 F.2d 1032, 1033 (5th Cir. 1990). "[T]o protect the rights of the incompetent person," the GAL may properly "compromise or settle the action." 43 C.J.S. Infants § 426.

Moreover, plaintiff was protected "'against an improvident compromise'" by Rule 4:44. Hojnowski v. Vans Skate Park, 187 N.J. 323, 334 (2006) (citation omitted); see Colfer v. Royal Globe Ins. Co., 214 N.J. Super. 374, 377 (App. Div. 1986). "[A] guardian ad litem may not enter into a binding settlement of an infant's claim without court approval." Wilkins v. Smith, 181 N.J. Super. 121, 126 (App. Div. 1981) (citing R. 4:44). The same was true here.

Under Rule 4:44, in "[a]ll proceedings to enter a judgment to consummate a settlement in matters involving minors and mentally incapacitated persons," the trial "court shall determine whether the settlement is fair and reasonable as to its amount and terms." R. 4:44-3. "This rule codifies the requirement that all settlements in favor of minors and mentally incapacitated persons be reviewed for fairness and reasonableness" in a "'friendly' hearing" to review the proposed "'friendly' judgment." Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 4:44 (2018).

Plaintiff contends the settlement could not be approved under Rule 4:44 because the rule addresses settlements "on behalf of a minor or mentally incapacitated person." However, the trial court found that plaintiff was mentally incapable of making the decision whether to settle the case. Accordingly, she was a "mentally incapacitated person" for the purpose of settlement, and Rule 4:44 applied. Rule 4:44 contemplates approval of settlements negotiated by a "guardian ad litem," and provides for their fees. R. 4:44-3. Indeed, "[t]he purpose of a [GAL] under R. 4:26-2 is clearly to protect the infant's or the incompetent person's interests in the course of litigation and 'friendly' judgments." Clark, 212 N.J. Super. at 413.

Thus, the trial court properly reviewed the proposed settlement under Rule 4:44.

VI.

Finally, plaintiff appeals the July 1, 2014 order approving the settlement. "[T]he calculation of a fair amount of damages is a matter well within the ken of trial judges and is a function routinely performed by them" in Rule 4:44 hearings and other proceedings. Werner v. Latham, 332 N.J. Super. 76, 85 (App. Div. 2000). Therefore, "the question or whether the settlement proceeds are adequate" is left to the discretion of the trial court. Ibid. We find no abuse of discretion here. See Suarez v. Berg, 117 N.J. Super. 456, 464 (App. Div. 1971).

The trial court reviewed the experts' reports and the evidence of plaintiff's injuries. Plaintiff's trial counsel noted the proposed $625,000 settlement was $150,000 higher than defendants' offer of judgment. Moreover, the GAL convinced plaintiff's trial counsel to reduce its agreed-upon contingency fee by $27,500, and the federal Department of Veterans Affairs (VA) to reduce its lien by $27,500 and to cap its lien at the level of plaintiff's medical expenses at the time of the settlement.

The trial court also found that plaintiff would face extra burdens if she went to trial. The eight MRIs before and after

the accident did not provide objective medical evidence of an organic brain injury, let alone the brain injuries she claimed from the accident. Some of the doctors who treated her were unwilling to testify on her behalf. The GAL added that there was an issue of what type of object had struck plaintiff, that there were major issues concerning the extent of her injuries and causation, and that "the downside risk of this case is tremendous." The court also heard testimony from plaintiff about why the court should reject the settlement.

The trial court found that the settlement was in plaintiff's best interest and that the amount was fair and reasonable. Indeed, the court found it was "the best possible settlement that [she] could get," and "the best thing for [her]." The court instructed County Glass and Walsh to pay $550,000 and Idesco to pay $75,000. It ordered the deduction of: $190,998.75 to plaintiff's counsel, representing $30,211.78 for actual costs and $160,786.97 for the reduced contingency fee; $22,720.50 to the GAL for his services; and $156,958.10 for the VA and workers' compensation liens. It ordered the balance of $254,322.65 to be paid to plaintiff.

We have reviewed the appendices supplied by all parties, including the material in the sealed appendices submitted by

plaintiff.  We find ample evidence to support the trial court's decision to approve the settlement.

Moreover, plaintiff's testimony confirmed that she had diminished mental capacity and was not mentally capable of deciding whether to settle.  When asked if she was satisfied with trial counsel's services, she spoke at length about her medical treatment.  When the question was repeated, she initially discussed counsel but went on to relate her life history at great length.  Plaintiff admitted that when she went to lectures "I can only process a third to a half of what is said."  The court found that plaintiff did not understand the risks she would run by going to trial, and that she was "not understanding everything that's happening here."

Plaintiff notes that the trial court stated she is "a very intelligent" person who has "a very good grasp" of her medical situation.  In Julius, the defendant similarly was "an apparently intelligent party, [but he] exhibited patterns of behavior . . . which were reasonably interpreted by the trial judge as either deliberately obstructive or the result of psychological stress or disease. . . .  The circumstances clearly warranted appointment of someone who would enable the litigation to move forward while protecting defendant's interests."  320 N.J. Super. at 309.  Similarly, plaintiff's

intelligence in other areas did not make up for her lack of mental capacity to decide whether to try or settle the case.

Plaintiff notes that the settlement will result in the payment of money directly to her, after the GAL's appointment terminates. However, it is not contended that plaintiff is incapable of managing money once received. The trial court simply found she was mentally incapable of deciding to try or settle the case, and appointed and empowered the GAL to protect her interests.

Plaintiff notes that "courts should never work to coerce or compel a litigant to make a settlement," and that "courts must 'avoid the appearance (as well as the reality) of coercion' of settlements from 'unwilling litigants.'" Peskin v. Peskin, 271 N.J. Super. 261, 275-76 (App. Div. 1994) (citation omitted). This case bears no resemblance to Peskin.

In Peskin, in trying to get a defendant to decide whether to settle, the trial court threatened him with contempt, refused to allow him to ask questions or explain, gave him thirty seconds to answer, warned he would not get another opportunity to settle, and said it would consider a refusal to settle in any fee application. Id. at 266-69. We held that "[t]he threatening nature of these remarks imposed impermissible pressure on defendant to settle." Id. at 278. "Courts should

not use the threat of sanctions to force the settlement of a case." Id. at 276. Here, the trial court did not do anything threatening or inappropriate.

Moreover, in Peskin we did not consider the "defendant's claim of lack of capacity to consent to the settlement." Id. at 279. We noted that "if one party was not competent to voluntarily consent thereto," that party could not decide whether to settle. Id. at 276; accord Brundage v. Estate of Carambio, 195 N.J. 575, 601 (2008). In that situation, "a guardian ad litem will have to be appointed." Wolkoff v. Villane, 288 N.J. Super. 282, 292 (App. Div. 1996). That was the situation here.

## VII.

We need not consider Idesco's contingent cross-appeal of the denial of summary judgment and reconsideration. Idesco asks us to consider its cross-appeal only if this court vacates the July 1, 2014 order approving the settlement, but we have affirmed it.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION