**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4986-18

IN THE MATTER OF THE
ESTATE OF AMRATLAL C.
BHAGAT, deceased.

_____

Argued March 15, 2021 – Decided April 9, 2021

Before Judges Mayer and Susswein.

On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. P-000063-13.

John J. Segreto argued the cause for appellant Ranjana Jethwa (Segreto & Segreto, LLP, attorneys; John J. Segreto, of counsel and on the briefs).

John W. Bartlett argued the cause for respondent Temporary Limited Administrator of the Estate of Amratlal C. Bhagat (Murphy Orlando, LLC, attorneys; John W. Bartlett, of counsel and on the brief).

Jonathan I. Epstein argued the cause for respondent Bharat A. Bhagat (Faegre Drinker Biddle & Reath, LLP, attorneys; Jonathan I. Epstein and Karen A. Denys, on the brief).

PER CURIAM

Ranjana Jethwa[1] (Ranjana) appeals from a June 4, 2019 final judgment authorizing the temporary limited administrator of the Estate of Amratlal C. Bhagat (Estate) to settle an action pending in the Superior Court of New Jersey, Burlington County, Chancery Division, entitled <u>Amratlal C. Bhagat (deceased) v. Bharat A. Bhagat, et al.</u>, Docket No. C-179-03 (Burlington County litigation). We affirm.

We provide a brief overview of the facts. This appeal involves three distinct litigations in different jurisdictions: Burlington County, the Bombay High Court in India, and Essex County. The Burlington County litigation involved a business dispute between Amratlal C. Bhagat (Amratal)[2] and his son, Bharat A. Bhagat (Bharat). The Bombay High Court matter, presently pending, involves a will contest among Amratlal's heirs regarding the Estate's assets, including proceeds from the settlement of the Burlington County litigation. The Essex County matter (Essex County litigation) involved the appointment of a

---

[1] We refer to the parties by their first name to differentiate the family members. No disrespect is intended by this informality. Ranjana is the decedent's daughter.

[2] Amratlal died in 2012 during the pendency of the Burlington County litigation. The Estate was substituted as the plaintiff in that action.

A-4986-18

temporary limited administrator to handle the Burlington County litigation on the Estate's behalf.

The Burlington County litigation, spanning more than fifteen years, involved ownership of a hotel in New Jersey. In 2003, Amratlal sued Bharat, alleging his son improperly transferred the hotel, which was held by a family corporation, to a limited liability company wholly owned by Bharat.

The circumstances leading to the Burlington County litigation are detailed in Bhagat v. Bhagat, 217 N.J. 22 (2014), and need not be repeated here. In Bhagat, the trial court and this court found the shares in the hotel conveyed by Amratlal to Bharat were a presumptive gift. Amratlal filed a petition for certification, which the New Jersey Supreme Court granted. Bhagat v. Bhagat, 208 N.J. 382 (2011).

In 2014, the Court ruled for Amratlal,[3] holding the burden to overcome the "presumption that the transferred property was a gift" required "clear and convincing evidence." Bhagat, 217 N.J. at 47. The Court explained a rebutting party would be "limited to evidence antecedent to, contemporaneous with, or immediately following the transfer. In addition, a party seeking to rebut the

---

[3] Because Amratlal died after his petition was granted, the Court allowed his Estate to be substituted as the plaintiff.

A-4986-18

presumption may also adduce proof of statements by the parties concerning the purpose and effect of the transfer." Ibid. Based on the adoption of a clear and convincing evidence standard, the Court reversed summary judgment for Bharat in the Burlington County litigation, concluding the matter presented a "a close case" with "sufficient factual issues to preclude summary judgment and to require a trial." Id. at 49.

The matter before the Bombay High Court involves three different wills executed by Amratlal: a 1997 will, a 2003 will, and a 2011 limited will/codicil. In 2012, Bharat sought to probate the 1997 will before the Bombay High Court because he was disinherited in the 2003 will after he transferred ownership of the hotel.

In February 2013, Ranjana filed suit in Essex County to probate the 2003 will and void the 1997 will. Bharat moved to dismiss the Essex County litigation. The judge denied Ranjana's application to probate the 2003 will in Essex County based on the will contest before the Bombay High Court. However, the judge in the Essex County litigation recognized the potential need to appoint a neutral administrator to represent the Estate in the Burlington County litigation depending on the Court's decision in Bhagat.

A-4986-18

After the Court rendered its decision in <u>Bhagat</u>, Ranjana returned to court in the Essex County litigation. Ranjana requested the judge in the Essex County litigation take jurisdiction of the Estate matter. While the judge denied Ranjana's application, he ordered a neutral third party to serve as temporary limited administrator of the Estate's interests in the Burlington County litigation. In an August 1, 2014 order, the judge appointed John W. Bartlett, Esq., as the Estate's temporary limited administrator (Administrator), authorizing him to "prosecute the pending litigation in Burlington County" but not to "take control of any other assets of the [E]state or make any distribution[s] . . . without court approval . . . ."

Subsequent to his appointment, the Administrator reviewed the Burlington County litigation from its inception in 2003 through the date of the Court's decision in 2014.[4] He also attempted to locate bank accounts belonging to Amratlal to fund the Estate's pursuit of its claimed ownership to the hotel in the Burlington County litigation. However, the Administrator's efforts to obtain funds from Amratlal's bank accounts were unsuccessful.

---

[4] There were more than eighteen boxes of material reviewed by the Administrator related to Burlington County litigation.

A-4986-18

The Administrator then contacted counsel for Ranjana and Bharat to explore a possible settlement of the Burlington County litigation and the probate matter. The Administrator sought to pursue a potential settlement of the Burlington County litigation after learning the Estate was "impecunious" and lacked sufficient assets to fund a trial.

After assessing the evidence, the legal standard for determining gift transfers enunciated by the Court in Bhagat, and the Estate's likelihood of prevailing at a trial, the Administrator concluded settlement of the Burlington County litigation with Bharat was "the best course of action" for the Estate.

The Administrator agreed with the Court that the Burlington County litigation was "a close case." He also noted the Estate had limited evidence to support its contention the transfer of shares from Amratlal to Bharat were not a gift. The Administrator believed the "contemporaneous" evidence offered at a trial would likely result in a determination that Amratlal's transfer of shares to Bharat was an unconditional gift. The Administrator also recognized Bharat would testify the transfer of shares was a gift from his father. Because Amratlal was deceased, the Estate would be "unable to provide an alternative narrative" to Bharat's testimony.

A-4986-18

Based on this analysis, the Administrator decided to pursue settlement of the Burlington County litigation on the Estate's behalf. According to the Administrator, a settlement would dispose of the Estate's only asset in the United States, the hotel, and allow the Estate to recover cash funds to be held in escrow pending resolution of the matter before the Bombay High Court.

Because the hotel was solely owned by Bharat's corporation, the Administrator required Bharat's approval to sell the property. The terms of the proposed sale were extensively negotiated between Bharat and the Administrator. Ultimately, they agreed upon a $4 million sale price for the hotel. The term sheet also accounted for the distribution of net proceeds from the hotel's sale after the payment of all outstanding debts and attorney's fees. The proceeds from the sale of the hotel would be distributed with Bharat receiving 41% and the Estate receiving 59%.[5]

The Administrator then filed a motion in the Essex County litigation, seeking leave to approve the settlement of the Estate's interest in the Burlington County litigation. In a supporting certification, the Administrator explained the term sheet represented "fair and reasonable terms for the settlement of [the

---

[5] The 59% allocation approached the percentage shares Amratlal claimed represented his ownership interest in the hotel.

A-4986-18

Burlington County litigation]." According to the Administrator, the "settlement w[ould] result in the Estate's recovering a substantial part of the value of the Burlington County property in cash; those funds w[ould] then be available to whichever of A[mratlal]'s heirs . . . eventually prevail[ed] in the Bombay High Court." The Administrator also highlighted proof problems confronting the Estate in the event the Burlington County litigation proceeded to trial.

Ranjana did not agree with the proposed settlement terms and opposed the Administrator's motion. Ranjana claimed the settlement was "wholly inadequate," resulting in a "windfall" to Bharat.

Ranjana also argued the Administrator abruptly reversed course regarding his earlier position the Estate had a strong claim and the value of the Estate's claim was closer to Ranjana's estimated worth rather than Bharat's estimated worth. According to Ranjana, the Estate's claim against Bharat in the Burlington County litigation was worth $29 million. However, in his certification, the Administrator explained in detail why he changed his thinking and pursued selling the hotel to resolve the Burlington County litigation.

After hearing counsels' arguments, as well as the Administrator's position, and conducting his own cost-benefit analysis, the judge in the Essex County litigation concluded it was "in the best interest of the Estate to compromise the

claim . . . ." The judge noted "[c]ourts place a high value on settlement" and determined the Burlington County litigation "should be settled."

Regarding Ranjana's $29 million valuation of the Estate's claim in the Burlington County litigation, the judge determined her value was "fanciful" and she lacked evidence supporting her valuation. In approving settlement of the Burlington County litigation as fair and reasonable, the judge concluded

> Tak[ing] into account the . . . risks that are involved here, the liability on the liability issues, on the damage issue, on the cost issue[,] . . . and recoverability, I think . . . it's a case that . . . warrants a settlement so we can move on and . . . resolve the issue, instead of taking another five years or ten years, in a worse-case scenario, before we know what to do with the litigation in Burlington and what to do with this ancillary administration here in New Jersey.

In a February 15, 2019 order, the judge in the Essex County litigation authorized the Administrator to "negotiate and consummate" settlement of the Burlington County litigation. In a June 4, 2019 order, the judge issued a final judgment, reaffirming the February 15, 2019 order authorizing the settlement of the Burlington County litigation.

On appeal, Ranjana contends the Essex County judge erred in approving the settlement of the Burlington County litigation. We disagree.

9

"Settlement of litigation ranks high in our public policy." Kaur v. Assured Lending Corp., 405 N.J. Super. 468, 475 (App. Div. 2009) (quoting Nolan by Nolan v. Lee Ho, 120 N.J. 465, 472 (1990)). "An agreement made to forestall pending litigation and a family dispute has a goal which is considered with high favor by the courts." In re Seabrook's Will, 90 N.J. Super. 553, 559 (Ch. Div. 1966) (citing DeCaro v. DeCaro, 13 N.J. 36 (1953)).

We review approval of a settlement for abuse of discretion. See S.T. v. 1515 Broad Street, LLC, 455 N.J. Super. 538, 566 (App. Div. 2018), rev'd on other grounds, 241 N.J. 257 (2020). Trial judges "routinely perform" damages calculations so "'the question [of] whether the settlement proceeds are adequate' is left to the discretion of the trial court." Ibid. (quoting Werner v. Latham, 332 N.J. Super. 76, 85 (App. Div. 2000)). The exercise of judicial discretion by a trial court "may be disturbed only if it is 'so wholly insupportable as to result in a denial of justice.'" Gillman v. Bally Mfg. Corp., 286 N.J. Super. 523, 528 (1996) (quoting Goodyear Tire and Rubber Co. v. Kin Props., Inc., 276 N.J. Super. 96, 106 (App. Div. 1994)).

Ranjana argues the judge mistakenly approved the settlement because the Administrator "essentially submitted nothing to the trial court seeking leave to settle the $29 million lawsuit . . . for [three] cents on the dollar." According to

Ranjana, the Burlington County litigation should have been tried because the settlement sum was neither fair nor reasonable. Alternately, she claims the hotel should have been sold by the Administrator or ordered to be sold by the judge handling the Essex County litigation, without Bharat's approval, and the proceeds escrowed until resolution of the will contest before the Bombay High Court. We reject both arguments.

First, we review the order issued by the judge handling the Essex County litigation for abuse of discretion and not, as Ranjana argues, the wisdom of the Administrator's decision to pursue settlement of the Burlington County litigation. Here, the judge conducted a cost-benefit analysis to determine the fair and reasonable value of the Estate's claim in the Burlington County litigation. The judge considered the risks involved in trying the Burlington County matter, the costs associated with trial of that case, the existence of "clear and convincing evidence" consistent with the Court's articulated legal standard in Bhagat to prove Amratlal's transfer of shares to Bharat were not a gift, and the Estate's ability to collect on a judgment if it prevailed in the Burlington County litigation. The judge also considered the hotel's $4 million valuation provided by a mutually selected real estate broker consulted by the parties in the Burlington County litigation. Significantly, Ranjana offered no countervailing

11

valuation information regarding the hotel.  Nor did she propose any alternatives to the sale of the hotel.

It is unclear how Ranjana formulated her $29 million valuation of the claim the Burlington County litigation.  Ranjana failed to cite any evidence other than her own unsubstantiated belief the claim was worth $29 million.  The judge handling the Essex County litigation deemed Ranjana's valuation "fanciful."  He also found no evidence upon which a jury could award $29 million if the Estate prevailed in the Burlington County litigation

Further, the Estate's likelihood of prevailing in the Burlington County litigation was uncertain.  In addition, even if there might have been a verdict for the Estate in excess of $4 million in the Burlington County litigation, there was a significant risk the Estate would collect nothing based upon the hotel's existing debts, the outstanding legal fees in the various litigations, and Bharat's own financial difficulties.

We are satisfied the judge in the Essex County litigation did not abuse his discretion in approving the settlement of the Burlington County litigation.  The judge noted the weaknesses in the evidence, the risks to both parties associated with a trial, and the possibility of a "recoverability issue" because Bharat may not have the "the assets to . . . pay off a $29 million judgment . . . ."  The judge,

who was intimately familiar with the Essex County litigation, conducted a thorough cost-benefit analysis of the settlement and determined the settlement was fair, reasonable, and not overly generous to either Ranjana or Bharat.

We next consider and reject Ranjana's claim the Administrator could have sold the property without Bharat's approval or the judge could have ordered the sale of the hotel. The hotel could not be sold without Bharat's participation because the Estate did not own the hotel after Amratlal's transfer of stock shares to Bharat. See Bhagat, 217 N.J. at 27. The Estate could only sell the hotel if it prevailed at trial in the Burlington County litigation by submitting clear and convincing evidence to rebut the presumption that stock transfers from Amratlal to Bharat were gifts. See ibid.

Based on the record, we are satisfied there was sufficient evidence supporting the Essex County litigation judge's approval of the settlement of the Burlington County litigation. We discern no abuse of discretion in the judge's decision, after completing his own cost-benefit analysis regarding the Burlington County litigation, that the settlement behalf of the Estate was fair and reasonable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4986-18